# CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *v.* CRAM.

## ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

No. 193.  Argued March 18, 1913.—Decided April 7, 1913.

The legislature of a State, when so authorized by its constitution, has power to impose a limitation of the time for transportation of livestock.

The legislature of a State, when so authorized by its constitution, has power to provide a definite measure of such damages as may be difficult to estimate or prove for culpable violations of a statute limiting the time for transportation of livestock.

A contention that a statute is unconstitutional under a particular provision of the Constitution cannot be made in this court if not made in the court below.

Contracts made after the enactment of a statute are subject to, and do not impair, it.

The cattle train speed act of Nebraska establishing a rate of speed on branch lines within the State and imposing a penalty of $10 per car per hour, is not unconstitutional under the Fourteenth Amendment as depriving the railroad company of its property without due process of law because it fixes an arbitrary amount as liquidated damages.

84 Nebraska, 607, affirmed.

The State of Nebraska enacted a law requiring railroads conveying livestock to convey the same at a rate of speed so that the time consumed in a journey from the initial point of receiving the stock to the point of feeding or destination should not exceed one hour for each eighteen miles travel, including the time of stops at stations or other points. It is provided that where the initial point is not a division station, and on all branch lines not exceeding 125 miles in length, the rate of speed shall be such that not more than one hour shall be consumed in traversing each twelve miles of the distance, including stops at stations or other points, from the initial point to the first division station or over said branches. The time consumed in picking up and setting out, loading or unloading stock at stations, shall not be included in the time required.

It is further provided that upon branch lines not exceeding 125 miles in length, livestock of less than six cars in one consignment the railroad company may designate three days in each week as stock-shipping days and publish and make public the days so designated. After notice of ten days of the days selected and designated the schedule provided in the act shall only apply to such stock-shipping days. It is provided that a carrier "violating any provisions of the act shall pay to the owner of such livestock, the sum of ten dollars for each hour for each car it extends or prolongs the time of transportation beyond the period here limited as liquidated damages to be recovered in an ordinary action, as other debts are recovered." The act was approved March 30, 1905. Nebraska Session Laws, 1905, p. 506, Chapter 107.

Defendant in error brought an action against plaintiff in error in the District Court of Garfield County, for the sum of $1770, being the aggregate of twenty-five violations of the act for stock delivered to the railroad July 14,

1905, and subsequent dates for transportation in full carloads, each violation being made a cause of action, the amount of each varying with the time of prolongation of the transportation of the stock.

There was alleged in the cause of action no ground of recovery other than the statute and the delay in the transportation of the stock. In other words, the time consumed in the transportation of the stock, such time being given and alleged to be "longer than permitted by the statutes of Nebraska, to the damage of the plaintiff . . . as provided for by statutes."

A demurrer was filed to the petition charging that the statute violated the due process and equality clauses of the Fourteenth Amendment of the Constitution of the United States; that the plaintiff (defendant in error) sought "to recover property or money from the defendant without its consent and for the private use of the plaintiff, without compensation, and which recovery, if had, would amount to confiscation of the property of the defendant in violation of the provisions of Article Fourteen of the amendments of the Constitution of the United States. The recovery sought by the plaintiff, if permitted, would be the recovery of a penalty under an act of the legislature which is penal in its character, and it is not such a right as the plaintiff can have or enforce, in violation of sec. 5, Art. 8 of the Constitution of Nebraska."

The demurrer was overruled and the defendant answered, alleging the following: The shipments were duly and properly made without unnecessary delay and the consignments carried were each and all duly delivered to the consignee in accordance with the contracts made for the shipment of the stock, and without any fault or negligence on the part of the defendant company.

A written contract for each shipment was duly made and entered into by plaintiff and defendant by which it was contracted and agreed that the shipments would

not be carried within any specified time, nor to arrive at destination for any particular market.

The damages sought to be recovered are in reality a penalty or forfeiture and that a recovery by plaintiff would be in violation of the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States.

The plaintiff's cause of action is for the recovery of a penalty sought to be imposed upon the defendant contrary to the provisions of article 8, § 5 of the constitution of Nebraska, and plaintiff had no right or authority under the law to prosecute the action or to recovery therein.

An amended answer was filed which repeated the above and alleged that the stock was accepted and carried according to the laws, rules and usages that regulated and governed common carriers, and in accordance with the schedules for the movement of trains as established and in force at the times the shipments were made. The line of the defendant's railroad was alleged, the manner of conducting its business, the times of receiving the various shipments, their arrival at particular stations and at destination.

A replication was filed to the answer denying its allegations.

The case was tried by the court without a jury and judgment was rendered for plaintiff in the sum of $1640 and costs.

The Supreme Court decided that the judgment was excessive in the amounts of $250 and $170 and those sums, in accordance with the order of the court, were remitted by the plaintiff, and with those reductions the judgment was affirmed. 84 Nebraska, 607.

*Mr. Halleck F. Rose*, with whom *Mr. James E. Kelby*, and *Mr. John F. Stout* were on the brief, for plaintiff in error:

The Nebraska statute so far as it creates a determinate and measured pecuniary liability against railroad companies in favor of shippers of livestock in car load lots, of $10 per car per each hour consumed in transportation over a specified speed schedule, is not a punitive measure, and cannot be upheld as an exercise of the police power.

The Supreme Court of the State construed the statute to be a mere legislative admeasurement and judgment, determining and liquidating the amount of pecuniary recovery by a stock shipper in car lots against railroads who failed to attain a specified rate of speed during the whole course of transportation.

The state court agreed that if the imposition was penal in character, it would be void because forbidden by the state constitution. *See Railway Co. v. Baty,* 6 Nebraska, 37; *Roose v. Perkins,* 9 Nebraska, 315; *Riewe v. McCormick,* 11 Nebraska, 264.

Punitive damages are not given in Nebraska in any class of cases between private parties. Compensation, under the rules of law, is all to which a plaintiff is entitled in a civil suit at law. *Bolt v. Budwig,* 19 Nebraska, 745; *Grand Island & W. C. R. Co. v. Swinbank,* 51 Nebraska, 525.

In *Graham v. Kibble,* 9 Nebraska, 185, the act there in question was upheld, not as a punitive imposition, but as a provision for liquidation of compensatory damages. And see *Grand Island & W. C. R. Co. v. Swinbank, supra.*

Imposition of damages in favor of the narrow class of shippers specified in the act for failure to observe a severe and impractical speed schedule is the equivalent of a rebate.

The legislatures of the States may not, consistently with the Federal guaranty of due process, determine and liquidate the amount of a pecuniary recovery in

damages enforceable in favor of one private suitor out of the property of another, in advance of the incident creating the right of recovery, and without notice, or opportunity of hearing, to either party.

Determination of the amount of the compensation or the quantum of damages suffered by a shipper of livestock in car load lots by prolonging the period of transportation, is a judicial function. It reaches and transfers to the shipper the property of railroads; and to whatever department or forum it may be referred, this function can only be exercised by proceedings conformable to the due process clause of the Fourteenth Amendment and in this respect the Nebraska act is unconstitutional. *Satterlee* v. *Matthewson*, 2 Pet. 413; *Vanhorn* v. *Dorrance*, 2 Dall. 304; *Loan Association* v. *Topeka*, 20 Wall. 655, 667; *Irrigation District* v. *Bradley*, 164 U. S. 158, 159; *Davidson* v. *New Orleans*, 96 U. S. 107; *Missouri P. R. Co.* v. *Nebraska*, 164 U. S. 403, 417; *Wilkinson* v. *Leland*, 2 Pet. 656; *Monongahela Nav. Co.* v. *United States*, 148 U. S. 311, 345; *Isom* v. *Mississippi C. R. Co.*, 30 Mississippi, 300, 315; *C., B. & Q. R. Co.* v. *Chicago*, 165 U. S. 233, 236.

While the property of railroads is employed to perform the public service of transportation, it is, none the less, private property, under the dominion of private ownership, and within the protection of constitutional guaranties. *Missouri P. R. Co.* v. *Nebraska*, 164 U. S. 417; *Smyth* v. *Ames*, 169 U. S. 466; *Missouri P. R. Co.* v. *Nebraska*, 217 U. S. 196; *Chicago, M. & St. P. R. Co.* v. *Minnesota*, 134 U. S. 418, 466. And see also *Ives* v. *South B. R. Co.*, 200 N. Y. 271.

Domestic animals constitute a considerable portion of the national wealth. The variations in value of different members of the same species will show, in horses for example, divergencies between $25 and $100,000. Divergencies equally marked in the valuations of individual

members exist in all the different species of domestic animals. In our system of government these animals are not subject to be valued by legislative act, any more than are lands or corporate franchises.

If the legislature be unfettered in the exercise of this despotic power it may fix the sum or amount of the claim at any figure that suits its will or whim. North Dakota, more moderate than Nebraska, in an act, since held invalid as an undue burden on commerce, fixed $5 per car per each hour as the measure of the stock shipper's claim for delay in transportation beyond a statutory speed schedule. *Douglas* v. *Northern P. R. Co.*, 125 N. W. Rep. 475, and see *C., R. I. & P. R. Co.* v. *Witte*, 32 Nebraska, 383, 384.

So also the legislature, if unfettered in its power to liquidate and measure damages, may supersede the functions of the court and jury by enacting legislation establishing damages in all other classes of cases.

*Sun Printing and Publishing Co.* v. *Moore*, 183 U. S. 642, distinguished, as was a case enforcing liquidated damages stated by contract. Whether the difficulty in proving the amount of damages is sufficient to relieve the function of determining the amount of recovery from the reach of the guaranty of due process, is a Federal question upon which the decision of the state court is not controlling.

The holding of the state court, that proof of the amount of damages accruing from delay in transporting livestock in cars is difficult or impossible, is palpably erroneous, contrary to common experience, and without any basis or foundation upon which to rest.

Previous to the adjudications under review, the Nebraska court had not found that there was any difficulty in proving the amount of damages actually sustained in such cases. *Nelson* v. *C., B. & Q. R. Co.*, 78 Nebraska, 57; *Denman* v. *C., B. & Q. R. Co.*, 52 Nebraska, 140; *C., B. & Q. R. Co.* v. *Williams*, 61 Nebraska, 608; *Wente* v.

*C., B. & Q. R. Co.*, 79 Nebraska, 179; *Squires* v. *Elwood*, 33 Nebraska, 126; *Gillilan* v. *Rollins*, 41 Nebraska, 540; *Lee* v. *Carroll Normal School*, 96 N. W. Rep. 65.

While the Fourteenth Amendment may not prohibit the States from assigning judicial powers to their legislative assemblies, that judicial power can only be exercised, by any department of the state government, in conformity to the requirement of due process.

Obviously the state court did not rest its decision either on the proposition that the state legislature could exercise judicial power, or that the imposition is penal.

If this court interprets the imposition on railroad companies in favor of shippers of livestock in car load lots of $10 per car for each hour of delay to be a punishment in the nature of a fine, as it did the Missouri statute in *Missouri Ry. Co.* v. *Humes*, 115 U. S. 512, the statute must be held repugnant to the equal protection guaranty.

*Mr. E. J. Clements*, with whom *Mr. S. H. Cowan* was on the brief, for defendants in error:

The Constitution of the United States does not prohibit a state legislature from exercising judicial functions, and whether or not it has done so is not a Federal question. *Saterlee* v. *Mathewson*, 12 Pet. 380. See also *Dryer* v. *Illinois*, 187 U. S. 71, which has been cited, with approval, in *Reitz* v. *Michigan*, 188 U. S. 507; *Carfer* v. *Caldwell*, 200 U. S. 297; *Prentis* v. *Atlantic Coast Lines*, 211 U. S. 225; *Soliah* v. *Heskin*, 222 U. S. 522.

The object of the act in question is the regulation of *quasi*-public corporations, in the conduct of their business as common carriers, and its provisions are clearly within the police power of the State.

Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. When a statute is susceptible of two constructions, one making it constitutional

and the other unconstitutional, the former must be adopted. Black's Const. Law, § 30; 8 Cyc. 801, 804; *United States* v. *Delaware*, 213 U. S. 407; *Knights Templars Co.* v. *Jarman*, 187 U. S. 197, 205; *Harriman* v. *Int. Com. Comm.*, 211 U. S. 407; *Hooper* v. *California*, 155 U. S. 657; *A., T. &c. R. R. Co.* v. *Matthews*, 174 U. S. 104.

In all of its relations to the public, a railroad company has the character of a public agent, is a *quasi*-public corporation, and is subject to any reasonable legislative regulation or control. 2 Elliott on Railroads, §§ 662, 670; 7 Cyc. 447, 448; *C., B. & Q. Ry. Co.* v. *Iowa*, 94 U. S. 113; *Gladsen* v. *State*, 166 U. S. 427; *Wisconsin &c. Ry. Co.* v. *Jacobson*, 179 U. S. 287; *Atlantic &c. Ry. Co.* v. *North Carolina Com.*, 206 U. S. 1.

Legislative power to regulate and control *quasi*-public corporations is not confined to railroad companies alone, but extends to banks, elevator, insurance, gas, water, telephone and telegraph companies, and all corporations engaged in business of a public nature. *Munn* v. *Illinois*, 94 U. S. 113; *Orieni Ins. Co.* v. *Daggs*, 172 U. S. 557; *German Alliance Ins. Co.* v. *Hale*, 219 U. S. 307; *Noble State Bank* v. *Haskell*, 219 U. S. 104.

The right of the legislature to regulate and control a business affected with a public interest is a part of the police power of the State. 9 Ency. of U. S. Sup. Ct. Dec. 483; *Lake Shore Ry. Co.* v. *Ohio*, 173 U. S. 285; *Lake Shore Ry. Co.* v. *Smith*, 173 U. S. 684; *Western Un. Tel. Co.* v. *Pendleton*, 122 U. S. 347; *C., B. & Q. R. Co.* v. *Drainage Co.*, 200 U. S. 561; *Bacon* v. *Walker*, 204 U. S. 311; *Bank* v. *Haskell*, 219 U. S. 104; *German Alliance Ins. Co.* v. *Hale*, 219 U. S. 307; *Gladson* v. *Minnesota*, 166 U. S. 427.

The fact that the company was organized under the laws of another State does not affect the right to regulate it. *Stone* v. *Farmers L. & T. Co.*, 116 U. S. 334; Freund on Police Power, § 398; 33 Cyc. 648; *New York &c. R. R.*

*Co.,* v. *New York,* 165 U. S. 628; *Harrington* v. *Georgia,* 163 U. S. 299.

The act in question is therefore a police regulation.

The object and purpose of § 2 are to enforce the regulations provided for in § 1, and to furnish a simple and expeditious remedy to a party injured by a violation thereof.

This method of enforcement does not in any manner conflict with the Fourteenth Amendment, or any other provision of the Federal Constitution. *Mo. Pac. Ry. Co.* v. *Hume,* 115 U. S. 512; *Minneapolis &c. Ry. Co.* v. *Emmons,* 149 U. S. 312; *Minneapolis &c. Ry. Co.* v. *Beckwith,* 129 U. S. 31.

If, therefore, § 2 provides for a penalty, it is not inimical to the Constitution of the United States. *Illinois &c. R. Co.* v. *Illinois,* 163 U. S. 152, distinguished, and see *Atchison &c. R. Co.* v. *Matthews,* 174 U. S. 96, 100; *Huntington* v. *Attrill,* 146 U. S. 657, 682.

If, upon independent inquiry, this court shall determine that the recovery provided for by § 2 is in the nature of a penalty, then its former decisions are conclusive that it does not violate the Fourteenth Amendment.

The construction placed upon this act and similar statutes by the Supreme Court of Nebraska does not affirm or deny that the statute is or is not a police regulation; nor that it is or is not penal in its nature; nor that if it were penal it would or would not violate the state constitution. Counsels' contention that the court held that it was penal is based upon the fact that the recovery is termed "liquidated damages."

The statute would not necessarily be unconstitutional if it provided for anything more than compensatory damages, or was in any sense penal. For cases in which penal, or *quasi*-penal, statutes have been upheld, see *Graham* v. *Kibble,* 9 Nebraska, 184; *Phœnix Ins. Co.* v. *Bohman,* 28 Nebraska, 251; *Phœnix Ins. Co.* v. *McEvony,* 52 Nebraska, 566; *Clearwater Bank* v. *Kurkonski,* 45

Nebraska, 1; *Deering* v. *Miller*, 33 Nebraska, 655; *Hier* v. *Hutchings*, 58 Nebraska, 334.

The common-law rule that, in cases showing wanton or malicious injury, punitive damages may be allowed,— which is still recognized and adhered to by this court and the courts of many States,—has been abrogated in some jurisdictions, including Nebraska. *Boyer* v. *Barr*, 8 Nebraska, 68; *A. & N. R. Co.* v. *Baty*, 6 Nebraska, 37.

This court has sustained punitive damage statutes under the Fourteenth Amendment. *Minn. Ry. Co.* v. *Beckwith*, 129 U. S. 27.

A state legislature has the power to fix, by statute, the maximum, or even the exact amount recoverable by a person sustaining injury from the delinquency of a public, or *quasi*-public, agent; and such a statute does not violate any of the provisions of the Fourteenth Amendment. Field's Law of Damages, § 17.

See cases involving the construction and enforcement of insurance statutes fixing penalties and damages. In several of said cases, it is expressly held that the statutory provisions in regard to the amount of the recovery amount to a statutory liquidation of damages, which become a part of the contract, and must govern notwithstanding any conflicting provisions embodied therein by the parties. *Lancashire Inv. Co.* v. *Bush*, 60 Nebraska, 121; *Oshkosh Gas Light Co.* v. *Ins. Co.*, 71 Wisconsin, 454; *Havens* v. *Ins. Co.*, 123 Missouri, 403; *Orient Insurance Company* v. *Daggs*, 172 U. S. 557; *Fidelity Mut. Assn.* v. *Mettler*, 185 U. S. 226.

The constitutional guaranties of due process and equal protection of law can have no greater force or effect when invoked by a railroad company than when claimed by an insurance corporation. *Brady* v. *Daly*, 175 U. S. 148. See also statute fixing liquidated damages for infringing patents. *Pirkle* v. *Smith*, 42 Fed. Rep. 410. See also for other liquidated damage statutes, *Coover* v.

*Walker*, 31 Missouri, 574; *Carroll* v. *M. P. Ry. Co.*, 88 Missouri, 239; *Miller* v. *M. P. Ry. Co.*, 109 Missouri, 350; *Lamphear* v. *Buckingham*, 33 Connecticut, 238; *Texas Cent. R. Co.* v. *Hannoy & Co.*, 130 S. W. Rep. 250; *Orange County* v. *Harris*, 97 California, 600.

MR. JUSTICE MCKENNA delivered the opinion of the court, after stating the case as above.

The case is here in a simple aspect. There was no attempt made to explain or justify the delays in the shipments, and any attack on the statute on the ground that it includes delays resulting from the act of God or cause over which the carriers have no control is precluded by the construction put upon the act by the Supreme Court of the State.

The only proposition, then, which is presented is whether the statute is beyond the power of government and, therefore, offends the Fourteenth Amendment of the Constitution of the United States by depriving plaintiff in error of its property without due process of law.

This is contended upon two grounds: 1. The statute, as considered by the Supreme Court of the State, is a legislative determination of the quantum of damages arising from a breach of a private contract for the shipment of livestock and a legislative determination of damages wholly distinct and apart from the exercise of police power, and not a punitive measure to enforce compliance with the commands of the statute. 2. The statute, being declared of such character, is "a usurpation of functions which are exclusively judicial, contrary to the law of the land" and repugnant to the provisions of the Fourteenth Amendment.

It is the concession of the contentions that had the statute been considered by the Supreme Court a police regulation, the objection made to it would be without

foundation. But, meeting the effect of the concession, plaintiff in error asserts that if the court had so ruled defendant in error would have had no right of action because under § 5, article 8, of the constitution of the State, all penalties must be appropriated to the use and support of the common schools.

The court found no conflict between the law and the constitution of the State. Section 5, article 8, however, was not discussed in any of the opinions. Other provisions of the constitution were considered and the contentions based on them decided to be untenable. The omission is not important to our inquiry, and we shall assume, as plaintiff in error contends, that the court regarded the statute as giving compensation for damages for injuries suffered rather than penalties for omission of duties prescribed. It does not follow, however, that the court decided that the statute was not passed in exercise of the power of the State to regulate the conduct of the carriers in the performance of their duties to the public. The opinion of the court makes the contrary manifest. The court said (p. 611), "In the instant case, the enforcement of the law, as we view the record, will not deprive defendant of any constitutional guarantee, state or national. Defendant's property is affected by a public interest . . . it must, to the limit of the interest thus acquired by the public, submit to the control of such property for the public good. . . . The public is interested not only in being permitted to have its property transported for a reasonable compensation, but also in having that property, especially if subject to rapid depreciation, transported with reasonable promptness and care. . . . It is a matter of common knowledge that livestock confined in a freight car deteriorates in condition and that, if the animals are to be placed on the market within a short time of the termination of transportation, the depreciation is not confined to a

shrinkage in weight, but to many other factors difficult
to prove, but actually existing and seriously affecting the
market value of said property.  As the damage accruing
from the protracted confinement of stock is difficult to
prove with reasonable exactitude, and yet always exists,
the legislature has the power to provide for liquidated
damages.  Such legislation is not unsound in principle
and has been upheld in many courts."

The court, in illustration of its views and the quality
of the statute, compared it to § 4966 of. the Revised
Statutes of the United States which provides for a lia-
bility of one hundred dollars for the first infringing per-
formance of a copyrighted dramatic piece and fifty dol-
lars for the second performance, as, the court said (p. 613),
"a reasonable liquidation of the damages which the pro-
prietor had suffered from the wrongful acts of the de-
fendant."

The court also adduced two examples from statutes of
the State sustained by decisions, in both of which fifty
dollars was given as liquidated damages; in one, against
an officer for collecting a fee greater than allowed by law;
in the other, against a mortgagee for failing to release a
chattel mortgage; and five hundred dollars against an
officer for re-arresting a person after his discharge on
*habeas corpus.*

Answering the objection that the legislature might sub-
ject an occupant of a public office to damages for particular
unlawful acts and not have such power over others, the
court said that the reason applied as well to "like provi-
sions in statutes passed to regulate public carriers in the
transaction of their business."

It is clear from the excerpts from the opinion of the
court that it considered the statute as passed to regulate
public carriers and to give damages against them for the
omission of the duties prescribed by it which, though
existing, could not be exactly estimated or proved.  The

court therefore only announced and applied the principle of liquidated damages. It would seem, too, by the examples it adduced from other statutes of the State, to reject the view asserted by plaintiff in error that even if the statute be regarded as imposing penalties upon the carriers, it was thereby made to conflict with § 5, article 8, of the state constitution and could be made payable to the party injured. This was declared in *Clearwater Bank* v. *Kurkonski*, 45 Nebraska, 1, and sums provided to be recovered by other statutes were decided in other cases to be in the nature of penalties. *Graham* v. *Kibble*, 9 Nebraska, 182; *Phœnix Ins. Co.* v. *Bohman*, ·28 Nebraska, 251; *Same* v. *McEvony*, 52 Nebraska, 566; *Deering* v. *Miller*, 33 Nebraska, 654. These cases are distinguishable from those cited by plaintiff in error in which the court disapproved a statute which purported to give double damages, and the court, in the case at bar, explicitly distinguished them from cases in which liquidated damages were provided for. In other words, the court decided that the statute imposed only compensatory damages, fixing them at a sum certain because of the difficulty "of the ascertainment of the actual damages suffered by the aggrieved person."

We need not extend the discussion. We repeat, the case is here in a simple aspect. Two propositions only are involved: (1) the power of the legislature to impose a limitation of the time for the transportation of livestock; (2) to provide a definite measure of damages which may be difficult to estimate or prove. It is too late in the day to deny the possession of the first power, and we think the other is as fully established and that the statute was enacted to meet conditions which had arisen from the conduct of carriers, and which, in the judgment of the legislature, demanded a remedy. And the court confined the act strictly to culpable violation of its requirements. To the plea of extra expense which might be incurred by

obedience to the statute, the court said it could be compensated by extra charge.

The contention is made that the statute impairs the obligation of the contracts which existed between plaintiff in error and defendant in error; but that contention was not made in the court below and cannot therefore be made here. Besides, there is no evidence of the contracts in the record. Contracts were pleaded and there appears to have been some attempt to introduce them in evidence, but unsuccessfully, and they were stricken from the bill of exceptions. But, assuming the contracts may be considered on this record, a complete answer to the contention that the statute impairs their obligation is, they were made subsequently- to the statute and, therefore, are subject to it.

*Judgment affirmed.*