## HUMBOLDT LAND & CATTLE CO. v. ALLEN, State Engineer, et al.

(District Court, D. Nevada. July 13, 1926.)

No. 140.

**1. Constitutional law ⊜318—Waters and water courses ⊜128—Nevada Water Law held not to deny due process of law because it does not require copies of exceptions to state engineer's order of determination to be served on each claimant.**

Nevada Water Law (St. 1913, c. 140, as amended), providing for exceptions to state engineer's order of determination defining relative rights of claimants of waters of stream, *held* not to deny due process of law because it does not require copies of exceptions to be served on each claimant.

**2. Waters and water courses ⊜128.**

Regulation of, and adjudication as to, right to use water of stream is not confiscation.

**3. Constitutional law ⊜113.**

Contracts made after enactment of Nevada Water Law were subject thereto and not impaired thereby.

**4. Waters and water courses ⊜128—Nevada statute held not to exempt existing water rights from proceedings to ascertain rights (Nevada Water Law, § 84).**

Nevada Water Law (St. 1913, c. 140), § 84 authorizing state engineer to institute proceedings to determine relative rights of appropriators of water, and providing that right of any person to use of water shall not be impaired or affected thereby, *held* not to exempt existing rights from provisions thereof, so as to preclude state engineer from proceeding to ascertain such appropriators' rights.

**5. Statutes ⊜174, 175.**

Statute must be construed, if possible, to give it force and effect, with reference to object to be accomplished by it.

**6. Evidence ⊜83(1)—Waters and water courses ⊜152(6)—State engineer and water commissioner are presumed to have performed statutory duties and burden of proof is on persons alleging contrary (Nevada Water Law).**

Presumption is that state engineer and water commissioner have and are performing their duties under Nevada Water Law (St. 1913, c. 140, as amended), but presumption is disputable, and merely puts burden of proof on persons alleging contrary in suit against engineer and commissioner for injunction.

**7. Waters and water courses ⊜152(5)—General denials, by state engineer and water commissioner held not to overcome specific charges of diversion of water from claimant's land (Nevada Water Law).**

Specific charges by claimant of water rights that state engineer and water commissioner, pretending to act under Nevada Water Law (St. 1913, c. 140, as amended), diverted water from claimant's land and wasted it on land of subsequent appropriators named, *held* not overcome on application for interlocutory injunction by defendant's general denials, notwithstanding presumption that defendants performed statutory duties.

**8. Waters and water courses ⊜152(5)—Persons benefiting by diversion of waters by state engineer and water commissioner held necessary parties to proceeding to enjoin diversion (Nevada Water Law).**

In suit to restrain state engineer and water commissioner, purporting to act under Nevada Water Law (St. 1913, c. 140, as amended), from diverting water of river from plaintiff's land, real parties in interest were plaintiff and persons benefiting by diversion, and, in absence of latter, federal court could not by injunction orders prejudice their rights.

In Equity. Suit by the Humboldt Land & Cattle Company against Robert A. Allen, as State Engineer of the State of Nevada and individually, and another. On plaintiff's application for injunction pendente lite. Application denied.

Albert C. Aiken and Carr & Guiler, all of San Francisco, Cal., for plaintiff.

M. A. Diskin, Atty. Gen., and Wm. Forman, Jr., Asst. Atty. Gen., of State of Nevada, and Geo. B. Thatcher, of Reno, Nev., for defendants.

Samuel C. Wiel, of San Francisco, Cal., amicus curiæ.

Before HUNT and RUDKIN, Circuit Judges, and FARRINGTON, District Judge.

FARRINGTON, District Judge. This is an action by the Humboldt Land & Cattle Company, a corporation, citizen and resident of California, against Robert A. Allen, indi-

vidually and as state engineer of the state of Nevada, and J. H. Holland, individually and as water commissioner of the same state.

It is alleged that the Humboldt river flows for ten miles through the Horseshoe ranch, a property consisting of 15,000 acres of land, now and for more than fifty years owned by plaintiff and its predecessors; that during all the years since 1872, and until prevented by defendants, it has appropriated and used an amount of the waters of Humboldt river sufficient to irrigate 10,500 acres of said ranch; that this use has been continuous, open, notorious, adverse, and for beneficial purposes. It has been accomplished by various dams constructed in the channel of the river, and some seven canals leading therefrom. This irrigation has been so arranged that the water, after overflowing the land, flows back into the river without wasting any part thereof. Plaintiff has leased a portion of the property to tenant farmers, agreeing to supply them sufficient water to irrigate the leased lands. Without the water, plaintiff will not be able to carry out the terms of the leases. One of the tenant farmers has now at the ranch several carloads of seed potatoes to be planted, all of which, with the crops to be raised therefrom, will be a total loss if defendants continue to deprive plaintiff and its tenants of its waters. There is now flowing in the river an amount of water which is sufficient, according to plaintiff's priorities of appropriation and vested rights, to irrigate said lands, but it is being carried past the Horseshoe ranch and wasted on the lands of subsequent appropriators below. April 27th defendants broke down one of plaintiff's dams so effectually that it is now wholly useless, and threaten further injury to plaintiff's property if it attempts to appropriate or use the water.

It is averred on information and belief that defendants are pretending to proceed under the Water Law of Nevada (Stats. 1913, p. 192) and amendments thereto, and that they are claiming the right thereunder to distribute the water of the river as they deem best, and without regard to, and in defiance of, plaintiff's rights.

It is next alleged that said Water Law cannot be enforced, and is unconstitutional, in that it deprives plaintiff of its liberty and property without due process of law, and without compensation; that it impairs the obligation of plaintiff's contracts, and denies to it the equal protection of the law; that defendants Allen and Holland will, if plaintiff attempts to assert its rights, cause proceedings to be prosecuted in the courts of Nevada for enforcement of the penalties prescribed

in the law; that, inasmuch as in section 84 of the statute it is provided that nothing in the act shall impair the vested right of any person to the use of water, and that the right of any person to take and use water shall not be impaired or affected by any of the provisions of the act where legal appropriations have been initiated prior to the approval of the act, plaintiff is exempt from its operation, and the acts and threats of the defendants set forth in the complaint are unlawful, without right and wholly contrary to the act of 1913, and the amendments thereto.

The prayer is:

(1) For interlocutory and permanent injunctions restraining defendants, their officers, agents, servants, and employees, and all persons acting under them, (a) from diverting Humboldt river water from the Horseshoe ranch; (b) from preventing plaintiff from beneficially using as heretofore the waters of the Humboldt river for irrigating said ranch; (c) from damaging, or threatening to damage, plaintiff's dams, canals, ditches, basins, flumes, or any other property used and useful in the irrigation of said lands as heretofore; (d) from interfering in any way with plaintiff's beneficial use of said water as heretofore; and (e) from prosecuting or threatening to prosecute plaintiff for diverting such waters

(2) That the Nevada Water Law of 1913 and all amendments thereto be declared unconstitutional.

(3) That a master be appointed to take account of the damages suffered by plaintiff in consequence of defendants' illegal acts, and to report the same, and that defendants be ordered to pay the same to plaintiff; and

(4) That plaintiff recover its costs, counsel fees, and such further relief as may seem proper or justice may require.

Plaintiff's application for a temporary restraining order was denied. Its application for an interlocutory injunction came on for hearing in San Francisco June 1, 1926, before three judges, as provided for in section 266 of the federal Judicial Code (Comp. St. § 1243).

The Nevada Water Law provides that, when the state engineer has filed with the clerk of the proper district court his order of determination, it shall have the legal effect of a complaint in a civil action, and a copy thereof shall be sent by registered mail or delivered to each person who has filed proof of a claim, or become interested by intervention or by filing exceptions. Section 33 (St. 1920-21, c. 106). An order setting a date for hearing is then made by the court, of which notice

must be given to each party in interest. Section 34 (St. 1915, c. 253). At least five days prior to the date so fixed all persons in interest, who are aggrieved or dissatisfied with the order of determination, shall file with the clerk of said court a notice of exception, stating therein the exception and the prayer for relief. A copy thereof shall be served on the state engineer. "The order of determination by the state engineer and the statements or claims of claimants and exceptions made to the order of determination shall constitute the pleadings, and there shall be no other pleadings in the cause." Section 35 (St. 1920–21, c. 106). On the day set for the hearing, all interested persons who have filed exceptions shall appear, and it is the duty of the court to hear them, or set a time for the hearing; "and all proceedings thereunder, including the taking of testimony, shall be as nearly as may be in accordance with the rules governing civil actions." Section 35. The order of determination is not operative until after it is filed with the clerk of the court. Thereafter, and during the time the hearing is pending in the district court, the water of the stream involved is distributed by the state engineer in accordance with the order of determination. Section 38 (St. 1915, c. 253). But the operation of the order at any time after it is so filed may be stayed in whole or in part by any party upon filing a bond in the court where such order of determination is pending, in such amount as the judge thereof may prescribe, conditioned that such party will pay all damage that may accrue by reason of such determination not being enforced pending decree by the court. Section 39 (St. 1915, c. 253). The state engineer has authority "to shut or fasten, or cause to be shut or fastened, the headgates or ditches, and to regulate or cause to be regulated the controlling works of reservoirs, as may be necessary to insure a proper distribution of the waters thereof." Section 54 (St. 1913, c. 140).

January 17, 1923, the state engineer made and filed with the clerk of the Sixth judicial district court of Humboldt county, his order of determination. A time was promptly fixed for hearing said order, and such exceptions and objections thereto as might be given and filed. A copy of the order was forwarded to each person interested in or affected thereby. Due notice of the time fixed for the hearing was served on all parties. Within five days prior to the date of hearing, about forty water users filed their exceptions to the order. Among those so excepting was the present plaintiff, the Humboldt Land & Cattle Company. The exceptions, in so far as they went

to the jurisdiction of the court and the constitutionality of the Water Law, were overruled; whereupon the plaintiff, Humboldt Land & Cattle Company, applied to the Supreme Court of Nevada for a writ of prohibition. The application was denied, and the constitutionality of the act upheld. 47 Nev. 396, 224 P. 612. The district court for Humboldt county then proceeded with the hearing. The case was submitted February 1, 1926.

Injunctive relief pending suit is now asked:

(1) Because the statute under which defendant professes to be acting is unconstitutional.

(2) Because plaintiff under express provisions of the act is exempt from its operation.

(3) Because defendants are acting arbitrarily and in excess of their authority, in that they are depriving plaintiff of all water, to its great injury, and are suffering water so taken to be used by others whose rights thereto are junior to plaintiff's.

(4) Because large quantities of water are being wasted in the Battle Mountain Basin below the Horseshoe ranch.

[1] Objection is made that the statute does not afford due process of law, because there is therein no specific requirement that exceptions and objections to the order of determination shall be served on each claimant. This very objection was presented to the Supreme Court of Nevada in Humboldt Land & Cattle Co. v. District Court, 47 Nev. 396, 224 P. 612, and held to be without merit. In that decision Justice Sanders, speaking for the court, said:

"The statute is always presumed to be known, and, in view of the character of the proceeding, hedged about, as it is, with notices of every material step taken in the one comprehensive proceeding, the law presumes that each water claimant will keep in touch with his water right defined by the order of determination of the engineer and straightway inform himself if any peril threatens it by those excepting. No further notice is required, and, since each claimant is a party to the proceeding, and has notice, and a reasonable opportunity is afforded him to defend his claim, the procedure satisfies the requirement of due process of law.

"We do not accept the proposition that to constitute due process of law the procedure must be measured by the standard essential to notice in ordinary judicial proceedings. The proceeding is a special proceeding applicable to the specified subject-matter and suitable to the end which the state seeks to accomplish, namely, to protect all the collective users of

water, secure a just distribution, and perpetuate water rights in a public record under such safeguards for the protection of individual rights as the settled maxims of the law permit and sanction."

After disposing of a number of questions, the court finally concluded that "the Water Law of Nevada is in all respects constitutional."

That decision was rendered March 26, 1924. Again the Water Law and the same order of determination were before the Supreme Court of Nevada (In re Water Rights in the Humboldt River Stream System, 246 P. 692), on an appeal of the Old Channel Ditch Company from an order of the trial court made May 22, 1925, refusing to grant an injunction. Mr. Justice Coleman said:

"The law meets every demand for a full, fair, and just determination of the rights of every water user. It safeguards the rights of every water user by giving him the benefit of a stay of the order of determination until final decree and every advantage of a full judicial hearing and determination in the district court. Though these rights are secured to him, he must avail himself of them by proceeding in the manner outlined in the Water Law. The law is constitutional, and there is no contention to the contrary." (Decision rendered June 5, 1926.)

The purpose which prompted enactment of the Nevada Water Law of 1913 was to provide an economic, workable, comprehensive procedure, whereby the property of each water user in, and his relative rights to, the beneficial use of the waters flowing in a stream of this state may be ascertained, defined as to time, quantity, priority of use, and made a permanent record.

[2] Water appropriators and appropriations on each of the main streams of the state are numerous. Each appropriator is vitally concerned in every other appropriation. The need for water is imperative, and often the supply is insufficient. Such conditions lead inevitably to many serious controversies, and demand from the state an exercise of its police power, not only to ascertain rights, but also to regulate and protect them. Regulation, however, is not confiscation. The same may be said as to adjudication. In order to deal with a problem, difficult and peculiar, if for no other reasons because of the vast number of parties and interrelated rights which may be involved, and the rule that no one has a right to use or divert water except for a beneficial purpose, the Legislature has provided a special proceeding. To require each party dissatisfied with the engineer's order of determination, after filing his objections and exceptions with the clerk, and serving them on the state engineer, to serve them also on every other party interested in the stream system, of whom there may be 500 or 600, or more, would impose an intolerable burden on the court as well as litigants. In many instances the cost of objecting would be prohibitive. The order of determination, prepared as it is by a disinterested public official, when filed with the clerk, constitutes the complaint. Each party who has filed proof of his claim, or become interested by intervention, or filing an exception, must be furnished with a copy. This order or complaint is preceded in the earlier stages of its preparation by a preliminary order of determination, defining the several rights of each claimant to waters of the stream. A printed copy thereof, with a printed copy of the abstract of proofs on which it is based, is served on each party who has appeared and filed proof of his claim with the state engineer; and the evidence taken by or filed with the engineer must, for not less than twenty days, be open for inspection of all parties interested. Notices are given as to when and where any person claiming an interest in the stream may object to any finding in this preliminary order, examine the evidence on which it is based, and have his objections determined. Sections 28, 29, 30. The final order of determination, containing as it does detailed findings as to each right of each claimant, is a remarkably comprehensive pleading, in the making of which each person who files proof of a claim has had a part. Section 33. It affords him notice as to what each other claimant, in the opinion of the state engineer, is entitled to claim and to be allowed. When this is served with a notice of the date set for hearing, each claimant is thereby notified as to when and where he may file objections, and inspect the objections and exceptions of other parties. All this, as the Supreme Court of Nevada holds, satisfies the requirements of due process of law. Humboldt Land & Cattle Co. v. District Court, 47 Nev. 396, 224 P. 612, 614. Moreover, there is no complaint that any one has failed to have sufficient notice in the present proceeding.

[3] The Water Law of 1913 is not open to the objection that it impairs the obligation of a contract entered into long subsequent to its enactment. The complaint fails to disclose when the leases referred to in paragraph 3 were made. In the argument it was asserted they were of recent date. Contracts made after a law is in force are subject thereto, and are not impaired thereby. Abilene National Bank v. Dolley, 228 U. S. 1, 33 S. Ct. 409, 57

L. Ed. 707; Chicago, Burlington & Quincy R. Co. v. Cram, 228 U. S. 70, 33 S. Ct. 437, 57 L. Ed. 734.

[4] There is an allegation in the complaint to the effect that plaintiff's water rights, having been acquired many years prior to the passage of the statute of 1913, under section 84 thereof, are expressly excepted from its operation.

Section 84 reads as follows:

"Nothing in this act contained shall impair the vested right of any person to the use of water, nor shall the right of any person to take and use water be impaired or affected by any of the provisions of this act where appropriations have been intitiated in accordance with law prior to the approval of this act. Any and all appropriations based upon applications and permits now on file in the state engineer's office, shall be perfected in accordance with the laws in force at the time of their filing."

It is argued that the words "or affected" as used in this provision absolutely exempt existing rights; that is, rights already vested when the law was enacted, from any of the provisions of the act, including determination or control, therefore the state engineer has no authority to ascertain plaintiff's water rights, or to bring them within any of the provisions of the Water Law.

According to the priority chart of the Humboldt river system, over 90 per cent. of the water rights on the stream, which were examined and determined by the state engineer, were found to have been acquired prior to 1913, and the holders of such rights entitled to more than 95 per cent. of the total water flow of the stream system.

[5] If the Water Law can apply only to rights initiated after its enactment, then as to the Humboldt river, and probably as to every other considerable stream in the state, it is utterly useless. Such a construction of section 84 would completely defeat the objects and purposes of the law.

"A statute must be construed, if possible, to give it force and effect." Hettel v. District Court, 30 Nev. 382, 388, 96 P. 1062, 1064, 133 Am. St. Rep. 730.

"Every statute must be construed with reference to the object to be accomplished by it." United States v. Musgrave (D. C.) 160 F. 700, 703; 36 Cyc. 1110.

Courts will not force a construction which will destroy a statute. The proper course "is to search out and follow the true intent of the Legislature, and to adopt that sense of the words which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the Legislature." United States v. Winn, Fed. Cas. No. 16,740.

In Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803, the Supreme Court of Nevada expressed its opinion of this proposition in the following words:

"It is contended that under the provisions of section 84, quoted supra, none of the other provisions of the act were intended to apply to water rights acquired prior to the adoption of the act; in other words, that the scheme of state control over the diversion of water to parties entitled thereto was to apply only to subsequent appropriations. We think the section is not subject to such construction. The section must be construed in connection with other provisions of the act. The whole scope and purpose of the act show that it was intended to apply to all water rights, whether acquired before or after its adoption. There would be little or no use in attempting state control over a stream or stream system unless all water rights were brought under that control."

To the same effect, see Bergman v. Kearney (D. C.) 241 F. 884, 891.

The complaint is not of the allowances in the order of determination, but that in executing it defendants have exceeded their authority, in that they have diverted water away from plaintiff, which is being wasted on lands below of subsequent appropriators, and otherwise.

The affidavit of Grayson Hinckley shows that defendant Holland, acting as water commissioner, by direction of Engineer Allen, on the 29th day of April warned plaintiff not to use any waters of Humboldt river, and closed its headgates, thus preventing the waters of the stream from flowing to the Horseshoe ranch, and on the 28th day of the same month destroyed one of plaintiff's dams; that during the months of April and May, while plaintiff was so deprived of the water, other claimants with rights junior to those of plaintiff, were awarded, or suffered to use, a considerable amount of water from the river, among these T. G. Griffin, W. J. Linebarger, Ellen Griffin, Charles Dressi, and Hunter-Banks Company, in the Elko district, the Dunphy ranch, the Argenta ranch, the Faris ranch, the Blossom, McIntire, and Jenkins ranches, in the Battle Mountain District, the Paul Pinson ranch and Hammond Bros. ranch in the Golconda district.

The order of determination shows that the water rights of T. G. Griffin, W. J. Linebarger, and Ellen Griffin were not initiated until 1876; those of Hammond Bros. and Paul Pinson not until 1875 and 1885, respectively.

At Rocky Point there is a large dam from which 31 second feet were flowing through a canal to the Blossom, McIntire and Jenkins ranches. A large portion of this water was running on alkali and sagebrush land, and on 200 acres of land having a priority subsequent to 1874. Further down the river was a large dam backing up the water approximately 4 miles. There is also a general statement that other water users whose priorities are subsequent to those of plaintiff were permitted to take water in violation of plaintiff's rights; that much water was distributed on wire grass land, among tules, and along miles of sloughs, many of which were bank full, from which loss by evaporation was excessive.

W. H. Settelmeyer, a civil engineer heretofore employed by the United States government and by the state of Nevada in making irrigation investigations, in May of this year inspected water conditions on the Humboldt river below Elko. He states that: "The irrigation of very many of the large ranches below the Horseshoe is accomplished by the same crude method which was employed by them from the earliest days to the present time, and which consists of the building of tight dams in the river only, backing the water up river for a great distance so that it will overflow the banks and flood the land, indiscriminately watering grass, tules, willows, and other crops of doubtful value." On the dividing line between the Dunphy and Argenta ranches there were 600 acres of land covered by water backed up by dams in the river. On the Faris ranch below the Argenta, there were about 900 acres under water. At the Horseshoe ranch he found all the headgates closed, and about 120 second feet of water flowing in the river. At Comus, near Golconda, at the west end of the Battle Mountain Basin, there were but 35 second feet. Thus below the Horseshoe ranch in the Battle Mountain district 85 second feet disappeared.

The allegations as to wasteful use and allowance of plaintiff's water to junior appropriators, supported as they are by affidavits of Hinckley and Settelmeyer setting out and describing specific instances, are met by a general statement in the affidavit of the state engineer that he and his assistants have been and now are "distributing the water of Humboldt river and its tributaries to the claimants and appropriators thereof strictly in accordance with said order of determination"; that the downstream appropriators are entitled to 93 cubic feet per second of water for 180 days; that the loss by evaporation and seepage before delivery to said downstream appropriators will necessitate a flow in excess of 50 cubic feet per second flowing past the diversion point of the plaintiff, in addition to the said 93 cubic feet per second required by said priorities; that there are approximately 116 cubic feet per second of water flowing by the Horseshoe ranch. Below this there are 20 water users, with an aggregate of 9,000 acres of land to which there are rights of irrigation prior to those of plaintiff, and if plaintiff is permitted to take the water claimed by it, these 20 appropriators will be deprived of their water, and of the crops to be grown by the irrigation thereof, to their great and irreparable damage.

[6] There is a presumption that the state engineer and the water commissioner have performed and are performing their duties in conformity with the statute. This, however, is disputable. Its effect is to throw the burden of proof on those who allege the contrary. Wadsworth v. Union Pac. Ry. Co., 18 Colo. 600, 33 P. 515, 23 L. R. A. 812, 36 Am. St. Rep. 309; McLean v. Farmers' High Line Canal & Reservoir Co., 44 Colo. 184, 98 P. 16, 18; 39 Cyc. 1437.

[7, 8] Even with the aid of this presumption, defendants' general denials do not overcome plaintiff's positive and specific charges. Plaintiff's charges might be considered sufficient to support an order allowing a reasonable flow of water to the Horseshoe ranch to save the more important crops thereon, were the parties who would be affected by such an order before the court. The water taken from plaintiff was given to other users. It was for their benefit that the ditches and headgates on the Horseshoe ranch were closed. Obviously the headgates and ditches cannot be reopened, and thus permit large quantities of water to flow as formerly to the Horseshoe ranch, without cutting short the supply of others now using the water. The water officials are nominal parties only, but the plaintiff, from whom the water was taken, and those who are now consuming it, are the real parties in interest. Without the latter there can be no complete determination of the controversy. A restraining order as prayed for could not be granted without prejudice to such consumers. This court cannot by its injunctive orders, though they are directed to state officials, effect a transfer of water from one consumer to another without giving both consumers a hearing; and this we think is true, even though in making the transfer the officials are directed to conform to an order of determination on file in the office of the county clerk pending a hearing thereon by the district court of Nevada. McLean v. Farmers' High Line Canal & Reservoir Co., 44 Colo.

184, 98 P. 16, 18; Hamp v. State, 19 Wyo. 377, 118 P. 653, 662; Comstock v. Larimer & Weld Reservoir Co., 58 Colo. 186, 145 P. 700, 703, Ann. Cas. 1916A, 416; Squire v. Livezey, 36 Colo. 302, 85 P. 181.

The amount or head of water needed to carry down the stream a quantity sufficient to satisfy the needs of those who have superior rights, is a question of fact as to which there is no allegation in the complaint, and no evidence sufficiently definite or specific to support a finding, even if all interested users were present.

As to adverse user, and as to what is termed by counsel a revolutionary cancellation of a long-maintained situation, there is neither pleading nor evidence to the effect that plaintiff has used the waters of the stream for such a length of time and under such conditions as to impair or subordinate prior rights of water users below the Horseshoe ranch.

The application for injunctive relief pending suit must be denied.