**HUMBOLDT LOVELOCK IRRIGATION LIGHT & POWER CO. v. SMITH, State Engineer of Nevada (PERSHING COUNTY WATER CONSERVATION DIST. OF NEVADA et al., Interveners).**

No. H–194.

District Court, D. Nevada.

Dec. 12, 1938.

Hawkins, Mayotte & Hawkins, of Reno, Nev., for plaintiff.

Gray Mashburn, Atty. Gen. of Nevada, for defendant.

H. R. Cooke and Roy W. Stoddard, both of Reno, Nev., and John A. Jurgenson, of Lovelock, Nev., for interveners.

Before WILBUR, Circuit Judge, LOUDERBACK, District Judge and NORCROSS, District Judge.

PER CURIAM.

Plaintiff, a Nevada corporation, filed its Bill of Complaint in this Court praying for a decree, in addition to other relief, granting an injunction against defendant interfering with certain of its alleged water rights in the Humboldt River in the State of Nevada. Jurisdiction of this Court is based on the alleged ground that Section 75 of the Water Law of the State of Nevada, Section 7961, Nevada Compiled Laws 1929, as construed by the Supreme Court of the State of Nevada, is in violation of Article 1, Section 10 and of the Fourteenth Amendment of the Constitution of the United States, U.S.C.A.Const. art. 1, § 10, and Amend. 14. On behalf of defendant there has been filed a motion to dismiss and, subject thereto, an answer. Answers in intervention have also been filed by the Pershing County Water Conservation District of Nevada, and by certain land owners within that District.

The motion to dismiss presents the question whether the provisions of the Nevada Water Law and particularly Section 75 thereof, Comp.Laws Nev. § 7961, is violative of plaintiff's constitutional rights, and deprives plaintiff of property without due process of law.

Plaintiff is the owner of a reservoir constructed for the purpose of impounding surplus and unappropriated waters of the Humboldt River for subsequent use for irrigation and power purposes. It has contracts for water supply with its stockholders, most of whom are owners of land adjacent to the said Humboldt River, requiring water for the irrigation thereof. The alleged wrongful action of defendant is claimed by plaintiff to prevent it from fulfilling its contractual obligations with its stockholders, to its damage in amounts required to be paid by said stockholders for the supply of water so contracted to be furnished, thus violating its rights under Section 10 of Article 1 of the Federal Constitution, U.S.C.A.Const. art. 1, § 10. The State Water Law and particularly said Section 75 thereof, as construed by the Supreme Court of the State, it is alleged, deprives plaintiff of an adequate remedy to enforce its rights, and so denies it due process of law in violation of the Fourteenth Amendment, U.S.C.A.Const. Amend. 14.

The Bill of Complaint is quite lengthy —thirty-eight pages—but the following statements appearing therein will be sufficient to present the constitutional questions involved:

"That plaintiff is possessed of a right to store in its reservoir annually a minimum of 49,770 acre feet of the waters of the said Humboldt River, pursuant to and by virtue of the laws of the State of Nevada applicable thereto, during the year 1908, and during the year 1911, and that at all times since the said respective dates, until the interference therewith by the defendant, plaintiff has used the said water rights when, and as, there was water in the said Humboldt River available and applicable to the said water rights and has used the waters so stored for the irrigation of lands, watering stock and domestic purposes. That defendant has decided, claimed and announced that much of the water, to-wit, 20,000 acre feet, stored as alleged, is, in fact, decreed water, and not stored water, and has so advised some of the stockholders of plaintiff and has published and/or circulated, and caused to be circulated, the said decision, determination and declaration in the said community, and is continuing so to do; that by the term decreed water, the said defendant means and intends that the said water was and is not subject to storage, and was and is subject to the use of irrigators upon said river whose appropriations antedate those of plaintiff."

"That on March 15, 1937, defendant, as State Engineer, arbitrarily and inequitably and without notice thereof, and without a hearing concerning the same, afforded to this plaintiff, closed and/or caused to be closed, the intake gates and/or canal leading, as aforesaid, from said Humboldt River, into plaintiff's said reservoir system, and so arbitrarily and inequitably, caused the above referred to diversion dam, belonging as aforesaid, to and used by plaintiff, to be opened, and so caused all waters then flowing in the said Humboldt River to pass by said plaintiff's intake and diversion works, and caused or permitted all such water to be impounded and stored in that certain reservoir known as Rye Patch Dam and reservoir, which had and has only a right to store flood and surplus waters of said Humboldt River with a priority of April 10, 1935."

"That at said time there was flowing in said Humboldt River at the said point of intake of plaintiff's said reservoir approximately 500 cubic feet per second of water, and into plaintiff's intake canal and reservoir system approximately 250 cubic feet per second. That said defendant arbitrarily and inequitably kept the said intake gates to plaintiff's reservoir system closed, and the said diversion dam of said system open from said March 15th to April 23, 1937, and arbitrarily and without hearing having been had thereon, and without notice to this plaintiff, and without an opportunity to be heard concerning the same, took from plaintiff approximately 17,000 acre feet of water to which plaintiff was then and there legally and lawfully entitled, and for which plaintiff could and would have received from its stockholders the minimum sum of approximately $12,750, * * *."

"That at all times between said March 15, 1937 and said April 23, 1937, there was flowing in said Humboldt River at said point of intake of plaintiff's aforesaid works, water greatly in excess of 250 cubic feet per second, and that none of the said waters was then needed and/or being used in the irrigation of any lands by any irrigator and/or person."

"That on or about June 19, 1937, the said named defendant, as State Engineer, acting through and by one J. A. Millar, in writing, arbitrarily and inequitably, notified plaintiff that after June 19, 1937, he, said

State Engineer, would not deliver or distribute any water released from plaintiff's said reservoir to and for the use of its stockholders."

"That thereafter and on or about June 21, 1937, the said defendant, as State Engineer, arbitrarily and inequitably closed, and caused to be closed, the headgates of the said above referred to Young Ditch and Old Channel Ditch, and arbitrarily, wrongfully, and inequitably caused waters that had been and were being released from plaintiff's said reservoirs by plaintiff into said Humboldt River,—for the use of, and at the request of, its stockholders, taking water through said ditches, respectively,—to pass by and be diverted away from said respective ditch headgates and/or intakes, and thereby deprived the said stockholder users of water under the said respective ditches, of said waters belonging to plaintiff, and then and there being delivered to plaintiff's stockholder contract users; * * *."

"That because of the aforesaid, and other hereinafter referred to, arbitrary decisions, orders and conduct of the said defendant, as said State Engineer, plaintiff on July 16, 1937, in a certain action and proceeding entitled, "In the Matter of the Determination of the Relative Rights of Claimants and Appropriators of the Waters of the Humboldt River Stream System and its Tributaries", and numbered 2804 of the records and files of the Sixth Judicial District Court of the State of Nevada, in and for the County of Humboldt, filed its petition setting out the said decisions, orders and actions of said defendant, State Engineer, and sought relief by way of instructions and orders from the said Court, to be given to the said State Engineer; that after due consideration of the said petition, the said Sixth Judicial District Court did give to the said State Engineer certain temporary orders and instructions, and set the said matter and proceeding for further hearing for July 28, 1937, in said District Court.

"That in the interim between July 16th and July 28th, said defendant, State Engineer, therein represented by the Honorable Gray Mashburn, as Attorney General of the State of Nevada, applied for and received from the Supreme Court of the State of Nevada, a writ of certiorari, wherein and whereby the said Sixth Judicial District Court was commanded to send to the said Supreme Court certain records of said proceeding No. 2804, including the above referred to petition of plaintiff, and the said order of instructions entered by said Sixth Judicial District Court, upon and because of said petition. That thereafter a hearing was had upon the said certiorari matter, numbered 3209 of the records and files of said Supreme Court, before the Supreme Court of the State of Nevada, and on August 9, 1937, the said Supreme Court made and entered its certain order, in words and figures as follows, to-wit:

" 'This matter coming on for hearing upon the petition and return thereto, and counsel for plaintiff and relator and respondents being heard, and the court being fully advised in the premises and being of the opinion that the method of obtaining relief contended for by the Humboldt Lovelock Irrigation Light and Power Company, is exclusively provided for by Section 75 of the Water Law (Sec. 7961 N.C.L.), and that the respondent court and the Honorable J. M. Lockhart, Presiding Judge thereof, were without jurisdiction to entertain the proceeding complained of herein, and are without jurisdiction to further proceed therein,

" 'It is ordered, adjudged and decreed that the order and proceedings had, made and entered by said respondent court, and said presiding judge complained of by Plaintiff and Relator be, and the same are hereby set aside, annulled and held for naught, and said court and judge hereby restrained from further action in said proceeding.' "

It has long been the settled law in the arid and semi-arid states that a state, in the exercise of its police power, may regulate the manner of appropriation and distribution of water from natural streams for purposes of irrigation. Pacific Live Stock Company v. Lewis Oregon Water Board, 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084; Humboldt Land & Cattle Co. v. Allen, D.C., 14 F.2d 650; Bergman v. Kearney, D.C., 241 F. 884; Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803; Vineyard Land & Stock Co. v. District Court, 42 Nev. 1, 171 P. 166; Humboldt Land & Cattle Co. v. District Court, 47 Nev. 396, 224 P. 612; In re Water Rights in Humboldt River Stream System, 49 Nev. 357, 246 P. 692; State ex rel. Hinckley v. District Court, 53 Nev. 343, 1 P.2d 105; Hamp v. State, 19 Wyo. 377, 118 P. 653; State v. Lawrence, 165 Wash. 508, 6 P.2d 363.

From the opinion by Judge Farrington of this Court in Humboldt Land & Cattle Co. v. Allen, supra, we quote [page 653]: "Water appropriators and appropriations on each of the main streams of the state are numerous. Each appropriator is vitally concerned in every other appropriation. The need for water is imperative, and often the supply is insufficient. Such conditions lead inevitably to many serious controversies, and demand from the state an exercise of its police power, not only to ascertain rights, but also to regulate and protect them. Regulation, however, is not confiscation. The same may be said as to adjudication. In order to deal with a problem, difficult and peculiar, if for no other reasons because of the vast number of parties and interrelated rights which may be involved, and the rule that no one has a right to use or divert water except for a beneficial purpose, the Legislature has provided a special proceeding."

Section 75 of the State Water Law, Comp.Laws Nev., § 7961, reads: "§ 75. Any person feeling himself aggrieved by any order or decision of the state engineer, acting in person or through his assistants or the water commissioners, affecting his interests, when such order or decision relates to the administration of determined rights or is made pursuant to sections 52 to 88, inclusive, of this act, may have the same reviewed by a proceeding for that purpose, in so far as may be in the nature of an appeal, which shall be initiated in the proper court of the county in which the matters affected or a portion thereof are situated. The proceedings in every case shall be heard and tried by the court, and shall be informal and summary, but full opportunity to be heard shall be had before judgment is pronounced. And no such proceeding shall be entertained unless notice thereof, containing a statement of the substance of the order or decision complained of, and of the manner in which the same injuriously affects the petitioner's interests, shall have been served upon the state engineer, personally or by registered mail, at his office at the state capitol within thirty days following the rendition of the order or decision in question. A similar notice shall also be served personally or by registered mail upon the person or persons who may have been affected by such order or decision. * * * No bond shall be required except a stay is desired, and the proceedings herein provided for shall not be a stay unless, within five days following the service of notice thereof, a bond shall be filed in an amount to be fixed by the court, with sureties satisfactory to such court, conditioned to perform the judgment rendered in such proceedings. Costs shall be paid as in civil cases brought in the district court, except by the state engineer or the state; and the practice in civil cases shall apply and be consistent with the informal and summary character of such proceedings, as herein provided. Appeals may be taken to the supreme court from the judgment of the district court in the same manner and with the same effect as in other civil cases, except that notice of appeal must be served and filed within sixty days from the entry of judgment. The decision of the state engineer shall be prima facie correct, and the burden of proof shall be upon the party attacking the same. Whenever it shall appear to the state engineer that any litigation, whether now pending or hereafter brought, may adversely affect the rights of the public in water, it shall be his duty to request the attorney-general to appear and protect the interests of the state."

As the actual irrigation of arid lands is seasonal, usually from some time in March to some time in September, the storage of a portion of the water flowing in natural channels during the nonirrigation season or for a time of surplus waters during the irrigation season, for later use or during the next irrigation season is an important element of water conservation. Provision is made by law for such storage in reservoirs outside the main channel or by dams constructed within the channel. Some provision of law is necessary not only for the supervision of the various means of diversion from the stream system to the lands of the numerous owners along the system, but for the initiation, and record of new or additional rights which may not affect rights of prior appropriators. The Nevada Water Law provided for the office of the State Engineer and the appointment of such officer by the Governor. Since the creation of that office the State Engineer has not only had the initial determination of applications for additional rights such as storage rights in plaintiff's reservoir, but has been in direct charge of diversions from the Humboldt River to lands of its more than six-hundred users in accordance with a decree of a State District Court, with power to regulate such diversions in

accordance with his interpretation of such decree, subject, if his acts are questioned, to review by the Court of the county in which the matters affected or a portion thereof are situated.

■ It is clear that the section of the act in question affords a remedy for any order or decision of the State Engineer affecting the claimed rights of any person on the stream system. While said to be "in the nature of an appeal", the proceeding requires "notice thereof, containing a statement of the substance of the order or decision complained of, and of the manner in which the same affects the petitioner's interests, shall be served on the State Engineer * * * within thirty days following the rendition of the order or decision in question". ·A similar notice is required to be served on others who may have been affected by such order or decision. While the section of the statute does not designate the name of the pleading to be filed as a complaint or petition the moving party is designated "petitioner". While the name is not material, what the paper or file must contain is set out in the statute with particularity and it is provided that the decision of the State Engineer complained of ··shall be prima facie correct, and the burden of proof shall be upon the party attacking the same." This is nothing more than a statement of the application of the general rule that a public officer is presumed to perform his duty. An issue is thus presented, without further pleading as soon as the petition is filed. The petitioner is granted a further remedy in that he may apply for a stay. The section further provides that "the practice in civil cases shall apply and be consistent with the informal and summary character of such proceedings". Appeals may be taken to the Supreme Court "as in other civil cases". When we consider what is referred to in the statute as "the informal and summary character of the proceedings", there appears to be nothing "informal" excepting the pleading which, however, must set out the facts constituting the issue or issues. The proceeding is "summary" only in that it must be instituted within thirty days of the date of the "order or decision" complained of and appeals must·be taken within sixty days of the entry of judgment. However summary these fixed times of procedure may be, it is provided that "full opportunity to be heard shall be had before judgment is pronounced". It is clear from a reading of the provision of the statute in question that it does not deprive the plaintiff of due process of law.to enforce any rights it may have, which rights are of a nature subject to the police power of the state and, in the exercise of that power, may appropriately provide for a summary hearing which, however, does not deprive of a full opportunity to be heard before a court of competent jurisdiction with right of appeal to the Supreme Court.

■ The State Water Law, and particularly Section 75 thereof, Comp.Laws Nev. § 7961, does not deprive plaintiff of any constitutional rights. The complaint does not set out a substantial federal question and, consequently, this court lacks jurisdiction to dispose of the case upon its merits. The application for interlocutory injunction is denied, the restraining order is dissolved, and the case is dismissed.