GRANGE MUT. CAS. CO. *v.* CLIFFORD.

[Cite as Grange Mut. Cas. Co. v. Clifford, 13 Ohio Misc. 12.]

(No. A-207853—Decided October 31, 1967.)

Common Pleas Court of Hamilton County.

*Mr. Clement J. DeMichelis* and *Messrs. McCaslin, Imbus & McCaslin,* for plaintiff.
*Mr. Robert G. McIntosh* and *Messrs. McIntosh & McIntosh,* for defendant, State Automobile Insurance Co.
*Mr. Walter C. Beall* and *Messrs. Hoover, Beall & Eichel,* for defendants, Hammond and Mayfield.
*Mr. Henry E. Sheldon II,* for defendant Robert E. Clifford.

BETTMAN, J.   This is an action for a declaratory judgment in which the court is asked to declare which, if either, of two insurance policies covers the damages caused by an automobile driven by defendant Robert E. Clifford.   The facts, in brief, are as follows:

Clifford owned a 1954 Pontiac which was rapidly going to pieces in various respects.   On October 21, 1963, he entered into an agreement of purchase of a 1957 Pontiac from Lytle Chevrolet and took possession of the 1957 Pontiac that day.   He drove the 1954 Pontiac to his parents' house and parked it, intending to junk it.

On October 31, 1963, while driving the 1957 Pontiac, Clifford had an accident which is alleged to have caused various property damage and personal injuries.   On that date there was in effect a policy of liability insurance issued by Grange Mutual Casualty Company to Clifford.   The vehicle described therein was the 1954 Pontiac.   On the date of the accident title to the 1957 Pontiac was in the name of Lytle Chevrolet which carried a so-called dealer's liability policy with State Auto Mutual Insurance Company.   A certificate of title for the 1957 Pontiac was issued to Clifford on November 4, 1963.

I

Does the State Auto Mutual policy provide coverage?

This policy generally covers all vehicles owned by Lytle Chevrolet. It provides however "None of the following is an insured: * * * (iii) any person or organization other than the named insured with respect to an automobile. * * * (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale;."

It is argued that unless the agreement of sale *required* transfer of possession before the issuance of the certificate of title, Clifford's possession was not *pursuant* to an agreement of sale. This would appear a rather strained meaning. Whether the contract required delivery at that time or not the fact remains that Clifford and Lytle Chevrolet entered into a contract of sale for this particular vehicle and possession was thereupon transferred. By anyone's understanding, Lytle did not lend Clifford an automobile or simply give him permission to use an automobile. They delivered this 1957 Pontiac to him pursuant to the agreement of sale. Under the rule laid down in *Cook* v. *Kozell* (1964), 176 Ohio St. 332, the State Auto policy would not provide coverage.

## II

Does the Grange Mutual Casualty Company policy insuring Robert E. Clifford provide coverage?

The listed vehicle in the Grange Mutual policy is the 1954 Pontiac, not the 1957 Pontiac. However, it is contended that the policy provides coverage under one or more of three provisions hereinafter discussed.

■ Paragraph IV (a) states, "* * * the word 'automobile' means: * * * (4) NEWLY ACQUIRED AUTOMOBILE—an automobile, ownership of which is acquired by the named insured or his spouse * * * if (i) it replaces an automobile owned by either and covered by this policy * * *." On the facts of this case there is no doubt that under the common law or under the law of many states the 1957 Pontiac was "an automobile, ownership of which was acquired by the named insured," etc. See *Home Mutual Insurance Company* v. *Rose* (1945), 150 Fed. 2d 201 (C. A. 8th Neb.); *Maryland Casualty Company* v. *Toney* (1941), 178 Va. 196, 16 S. E. 2d 340; *Dean* v. *Niagara Fire Insurance* (1937), 24

Cal. App. 2d Supp. 762, 68 P. 2d 1021; *Farm Bureau Auto Insurance* v. *Martin* (1951), 97 New Hampshire 196, 84 A. 2d 823.

However, the key words in the paragraph are "ownership of which is acquired." It is clear in Ohio that the line between ownership and nonownership under the provisions of Section 4505.04, Revised Code, is drawn with the issuance of a certificate of title. Where an automobile is delivered by a dealer to a purchaser, and an accident occurs before the issuance of a certificate of title to the purchaser "ownership," under Ohio law, is in the dealer. *Brewer* v. *DeCant* (1958), 167 Ohio St. 411. See also *In re Estate of Case* (1954), 161 Ohio St. 288; *Garlick* v. *McFarland* (1954), 159 Ohio St. 539; *Veltri* v. *City of Cleveland* (1957), 167 Ohio St. 90. There is some language in *Carpenter* v. *Gasper* (1962), 116 Ohio App. 45, which could be interpreted otherwise but such language is dicta and if it implies a contrary result it has been superseded by the cases cited above. Since "ownership" was not in Clifford, the provisions of paragraph IV (a) (4) do not give him coverage.

■ It is also contended that the policy provides coverage under the following paragraph: "V—Use of Other Automobiles: If the first named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverage A, B-1 and D-1 with respect to said automobile applies with respect to any other automobile, subject to the following provisions: * * * (d) This insuring agreement does not apply: (1) to an automobile owned by or furnished for regular use to either the named insured or a member of the same household other than a private chauffeur or domestic servant of such named insured or spouse."

This paragraph clearly covers any liability of the named insured while driving any other automobile *unless* such other automobile is "owned" by him or "furnished for regular use." Under the decisions cited above Clifford

did not "own" the 1957 Pontiac under Ohio law. The issue then arises: Was the 1957 Pontiac "furnished for (his) regular use" so as to except it from the general coverage provided by paragraph V.

An analysis of the extensive annotation on this question in 86 A. L. R. 2d 937 commands the conclusion that in this type of situation the general rules will be applied (a) that an insurance policy must be interpreted to give effect to the intention of the parties, and (b) where there is an ambiguity the policy should be construed strictly against the insurance company and liberally in favor of the insured.

Light is cast on the intention of the parties as to the meaning of these specific words by considering the policy as a whole and by determining in layman's terms the spirit with which it is written and doubtless sold. IV (3) provides the insured with coverage while driving a "temporary substitute automobile" while his own is broken down or being serviced or repaired. IV (4) covers the insured for thirty days on a new additional automobile. V covers the insured when he is driving any other automobile with certain exceptions of which it is argued the present situation is one. Considering the whole policy, therefore, the evident intention is to cover all the risks of normal driving done by an average person and to give the insured a reasonable time to advise his insurer if he alters or increases the risk.

In that spirit can it be said that the company intended its insured not be covered during that brief period between his receipt of a new car and the transfer of the certificate of title? Would an insurance agent sell a policy with the statement "when you acquire a new car you will be covered for thirty days as long as you get a certificate of title but you will not have coverage for the period between delivery of the car and the issuance of the title certificate"? Certainly a prospective buyer would be amazed and the insurance agent chagrined to make such a statement.

The purpose of the "use of other automobiles" clause in this type of policy is to give the insured that coverage which he needs when he occasionally or for some brief period uses some other vehicle than the one listed in the policy but to exclude the habitual use of other cars which would

substantially increase the company's risk without a corresponding increase in the premium. Two Ohio cases illustrate the type of situation the "furnished for regular use" clause was intended to except. In *Kenney* v. *Employers Liability Assurance* (1966), 5 Ohio St. 2d 131, a policeman had an accident in his cruiser in which he worked 122 out of 164 working days. The court held that this was an automobile "furnished for his regular use." In *Farm Bureau Mutual* v. *Boecher* (1942), 37 Ohio Law Abs. 553, a used car salesman frequently took one of his employer's vehicles home. The court held the car was "furnished for regular use."

However, the situation we have here is clearly different. Lytle Chevrolet had no reason and no intention to furnish Clifford with one of their cars for his regular use. They only furnished him the 1957 Pontiac titled in their name on a temporary basis until title could be transferred to him. Clifford did not intend to regularly use an automobile belonging to Lytle Chevrolet. Implicit in the words "furnished for regular use" is the concept that such use either has continued over a period of time or the parties expect that it will. Clifford had the 1957 Pontiac in his possession but ten days and obviously neither Lytle Chevrolet nor he had any intention that he operate a vehicle belonging to Lytle for any length of time.

The mere fact that Clifford used this automobile exclusively during that ten-day period does not make it an automobile furnished for his "regular use." Suppose, for example, Clifford's son had been home for a college vacation for two weeks so he had let the boy use his vehicle for that period and had borrowed a friend's extra car to go back and forth to work. Could it reasonably be contended that his friend's car was "furnished him for his regular use"?

In *Pacific Auto* v. *Lewis* (1943), 132 P. 2d 846, 56 Cal. App. 2d 597, the court said: "Whether an automobile was furnished by another for his regular use may reasonably depend upon the time, place and purpose for which it is to be used." In the case at bar the time was to be brief—only so long as it took to have a certificate of title issued in Clifford's name. Under the law, the dealer was required to do

this promptly. The purpose was simply to give Clifford some form of transportation as a courtesy while the title papers were being put in order.

Synonyms for "regular" are normal and usual. In the *Kenney case* it was normal and usual for the police officer to drive the cruiser. In the *Boecher case* it was normal and usual for the salesman to take an automobile belonging to his employer home at night. It certainly was not normal or usual for Clifford to drive a motor vehicle owned by Lytle Chevrolet.

For the above reasons the court has concluded that an automobile turned over to a buyer under an agreement of sale is not an automobile "furnished for his regular use" during the period between its delivery and the issuance to him of an Ohio certificate of title. Clifford is, therefore, covered under paragraph V of the policy which gives him coverage as the named insured when driving any other automobile.

■ The policy further provides under paragraph IV(a) that "the word 'automobile' means: * * * (3) TEMPORARY SUBSTITUTE AUTOMOBILE—under coverages A and B-1 an automobile not owned by the named insured * * * while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." Having reached the conclusion that Grange Mutual's policy covers under its paragraph V, it is not necessary to determine the factual question raised under paragraph IV (a) (3)—whether the 1954 Pontiac was "withdrawn from normal use because of its breakdown."

An entry may be submitted accordingly.

*Judgment accordingly.*