**GLENS FALLS INSURANCE CO., a New York Corporation, Plaintiff,**

v.

**Helen Y. IRION and Robert Washington, Jr., J. O. Washington, Jr., Farmers Insurance Co., a California Corporation, Harlan Irion and Hartford Insurance Co., a Connecticut Corporation, Defendants.**

**Civ. No. 736.**

United States District Court, D. Montana, Billings Division.

Dec. 15, 1970.

———◆———

Charles A. Bradley, Billings, Mont., and Michael Mines, of Hullin, Roberts, Mines, Fite & Riveland, Seattle, Wash., for plaintiff.

Michael J. Hughes, Helena, Mont., and Colgrove & Brown, Miles City, Mont., for Helen Y. Irion and Harlan Irion.

Lucas & Jardine and Thomas M. Monaghan, Miles City, Mont., for Robert Washington, Jr., and J. O. Washington, Jr.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for Hartford Ins. Co.

## ORDER and OPINION

JAMESON, District Judge.

This is a declaratory judgment action in which all of the remaining parties have moved for summary judgment.[1]

In its amended complaint plaintiff alleged that it had issued three policies of insurance to Plaza Chrysler-Plymouth, Inc. (Plaza), Kenneth Ulstad, and Robert O. Washington, respectively, and sought a determination of its "rights, duties and responsibilities, if any, * * * to the named Defendants under the terms and conditions of the said three insurance policies * * *." The liability of the plaintiff depends in large part upon the ownership of a 1957 Mercury automobile on November 14, 1965, when it was operated by the defendant J. O. Washington, Jr., and collided with a vehicle owned by the defendant Harlan Irion in which the defendant Helen Y. Irion was riding as a passenger. The question of ownership in turn depends upon the construction of Section 53–109, R.C.M. 1947.[2]

Section 53–109 was construed by the Supreme Court of Montana in Safeco Insurance Company of America v. Northwestern Mutual Ins. Co., 1963, 142 Mont. 155, 382 P.2d 174, and by the Court of Appeals for the Ninth Circuit in National Farmers Union Property & Cas. Co. v. Colbrese, 1966, 368 F.2d 405. Alleging that Safeco and Colbrese announced "different rules of law", plaintiff contended that Colbrese set forth the "correct rule of law and the rule of law that should be applied to the facts" in this case. The defendants contended that "Safeco and Colbrese were distinguishable, and that in an event the decision of the Supreme Court of Montana in Safeco was controlling."[3]

On the basis of the pleadings and briefs filed by all of the parties, and following a hearing on November 6, 1968, this court concluded that the question should be certified to the Supreme Court of Montana pursuant to Rule 1 of the rules of that court.[4] All parties were

---

1. By order entered April 6, 1970 the motion of the defendant Farmers Insurance Company for summary judgment was granted. To clarify the present posture of the case and as background for the court's conclusions, it will be necessary to repeat portions of the memorandum opinion of April 6, 1970.

2. The pertinent provisions of section 53–109 are set forth *infra*.

3. Subsequent to the filing of the complaint in this action, the Supreme Court of Montana decided Ostermiller v. Parker, 1968, 152 Mont. 337, 451 P.2d 515, cert. denied, Glens Falls Ins. Co. v. Nationwide Mut. Ins. Co., 1969, 394 U.S. 975, 89 S.Ct. 1471, 22 L.Ed.2d 755, following Safeco.

4. Rule 1 provides that when "it shall appear that there is a controlling question of Montana law as to which there is a substantial ground for difference of opinion, a party to such action may institute suit in the Montana Supreme Court for a declaratory judgment or decree, and, if the judge of the United States Court wherein the action is pending shall certify that the question upon which adjudication is sought is controlling in the federal litigation and the adjudication by the Montana Supreme Court will materially advance ultimate termination of the federal litigation, a declaratory judgment

given an opportunity to submit a proposed statement of facts to be certified to the Montana court.

Both plaintiff and the defendants Irion and Washington submitted proposed statements, plaintiff's proposal concluding: "The question upon which determination is sought herein is: 'Who owned the 1957 Mercury on November 14, 1965?'" The proposals submitted by the respective parties formed the basis of the certificate of facts and issues entered by this court on March 25, 1969.

Pursuant to application of defendants Irion and Washington, the Supreme Court of Montana accepted jurisdiction to hear and determine "an original declaratory judgment action as the facts and issues" were presented and certified by this court.

Declaratory judgment was entered by the Montana Supreme Court on November 14, 1969, in Irion v. Glens Falls Insurance Company, 154 Mont. 156, 461 P.2d 199. The facts contained in the certificate of this court and forming the basis of the declaratory judgment of the Montana Supreme Court were well summarized in the court's opinion as follows:

"One Sherley M. Shelton had been the owner of the Mercury automobile, and held the Montana certificate of title thereto. On August 12, 1965, he purchased a new automobile from Plaza Chrysler-Plymouth, Inc., a licensed dealer in new and used motor vehicles at Billings, (hereinafter referred to as 'Plaza') and traded in the Mercury. Between August 25, 1965, and September 1, 1965, he delivered his certificate of title to Plaza after executing the assignment of title on the reverse side thereof in blank before a notary public. The Midland National Bank of Billings, Montana had a recorded lien on the vehicle and Plaza took care of getting an instrument from the bank which would authorize the Registrar of Motor Vehicles to release the lien. Shelton also delivered

the current Montana Certificate of Registration and Tax Receipt for the Mercury to Plaza.

"Meanwhile, Plaza had delivered the Mercury to Kenneth Ulstad, operator of a body and paint shop. Ulstad was not a licensed automobile dealer but occasionally took used automobiles from dealers at an agreed price in partial satisfaction of claims he had against such dealers for work he had performed for the dealers, performed such repairs as he deemed advisable, and resold them. In this instance, he credited Plaza's account with $95 for the Mercury. Plaza subsequently delivered Shelton's Certificate of Title, Certificate of Registration and Tax Receipt, together with the bank's lien release to Ulstad.

"On September 15, 1965, Kenneth Ulstad sold the Mercury to Robert O. Washington, Jr., who paid him $295 therefor; Ulstad then delivered the Shelton Certificate of Title, Certificate of Registration and lien release to him.

"Neither Plaza, Ulstad, nor Robert O. Washington, Jr., ever took any steps to have a new certificate of title issued.

"Robert O. Washington, Jr. and his brother, J. O. Washington, Jr., resided in the same household with their parents, Mr. and Mrs. Robert O. Washington. J. O. Washington, Jr. owned an automobile which was insured by Farmers Insurance Co. The senior Robert O. Washington had a so-called 'Family Automobile Policy' issued by Glens Falls Insurance Company, (hereinafter called 'Glens Falls') but which did not specifically describe the Mercury as an insured vehicle.

"On November 14, 1965, Robert O. Washington, Jr. permitted his brother to drive the Mercury. While he was doing so, it collided with the Irion vehicle inflicting injuries and damage. Irion's collision insurer was Hartford Insurance Co. and upon payment of the

or decree may be rendered." The rule further provides that the "[r]endition of a declaratory judgment or decree is dis-

cretionary with the Montana Supreme Court."

collision loss, it became subrogated to Irion's claim against J. O. Washington, Jr. for the property damage.

"In addition to the Family Automobile Policy issued to Robert O. Washington, Glens Falls also had in effect on November 14, 1965, two garage liability policies which it had issued to Plaza and to Ulstad.

"J. O. Washington, Jr. gave prompt notice of the accident of November 14, 1965, to Glens Falls, but it asserted it had no obligation with respect to said accident and that J. O. Washington, Jr. was not insured by it.

"Helen Y. Irion commenced an action against J. O. Washington, Jr. to recover damages for her injuries on January 12, 1966. At first Glens Falls refused to defend this action, It then, on April 24, 1968, commenced a declaratory judgment action in federal court seeking a determination that it was not obliged to do so and attempted unsuccessfully to have the federal court enjoin the prosecution of the personal injury action until this determination was made. It then made an unsuccessful attempt to have this Court do the same thing. See State ex rel. Glens Falls Insurance Company v. District Court, Mont., 440 P.2d 269 (1968). Finally, on the morning the case was set for trial, counsel for Glens Falls appeared and took over the defense of J. O. Washington, Jr. under an oral unilateral reservation of rights. Trial resulted in a judgment in favor of Helen Y. Irion for $140,000.

"Meanwhile, the Irions and their collision insurer, Hartford Insurance Co., filed suit against Robert Washington, Jr. and J. O. Washington, Jr. for damages to the Irion vehicle and Harlan Irion filed suit against J. O. Washington, Jr. for damages for his personal injuries." 154 Mont. at 159–161, 461 P.2d at 201, 202.

On the basis of the foregoing facts, this court submitted the following question to the Supreme Court of Montana:

"The question upon which determination is sought is whether, on November 14, 1965, at the time of the collision between the 1957 Mercury automobile driven by J. O. Washington, Jr., and the motor vehicle driven by Harlan Irion in which Helen Y. Irion was a passenger, the 1957 Mercury automobile was owned by Plaza Chrysler-Plymouth, Inc., by reason of the failure by it, by Kenneth Ulstad, by Robert Washington, Jr., or by any other person, to cause a change in the certificate of ownership covering said 1957 Mercury automobile, as shown by Exhibit 'A', by making application for a change of registration as provided in Section 53–109, R.C.M.1947, and, if said 1957 Mercury automobile was owned by Plaza Chrysler-Plymouth, Inc., on said date, by reason of such failure, whether Glens Falls Insurance Company insured J. O. Washington, Jr., against liability imposed by law for injuries to the persons and property of Harlan Irion and Helen Y. Irion arising out of his operation of said 1957 Mercury automobile at the time of the collision on November 14, 1965, under either its Policy No. PCL 639587 issued to Plaza Chrysler-Plymouth, Inc., Exhibit 'F', or its Policy No. GA 4–23–39 issued to Kenneth Ulstad, Exhibit 'E', or both thereof.

"This question involves an interpretation of Section 53–109, R.C.M.1947, and its bearing upon automobile insurance policies issued in Montana, upon which there is a substantial difference of opinion, and the answer thereto is controlling in the above entitled action and adjudication thereof by the Montana Supreme Court will materially advance the ultimate termination of this action."

With respect to the proper interpretation of Section 53–109, R.C.M.1947, the Supreme Court of Montana said:

"Subsection (c) of section 53–109, R.C.M.1947, contemplates that when an automobile dealer purchases a used vehicle previously registered in Montana, he shall hold the certificate of title,

and when he resells the car he, the dealer, shall have the purchaser sign an application for a new certificate of title, and that he, the dealer, shall forward the old certificate containing this application to the registrar of motor vehicles, who then issues a new certificate of title to the purchaser. Thus, paragraph (c) provides:

'(c) The provisions of subdivision (b) of this section, requiring a transferee to forward the certificate of ownership after endorsement and the certificate of registration to the registrar, *shall not apply* in the event of the transfer of a motor vehicle to a duly licensed automobile dealer intending to resell such vehicle and who operates the same only for demonstration purposes, but every such dealer shall upon transferring such interest deliver such certificate of ownership and certificate of registration *with an application for registration executed by the new owner in accordance with the provisions of section 53–107*, and the registrar upon receipt of said certificate of ownership, certificate of registration and application for registration, together with the conditional sales contract or other lien, if any, shall issue a new certificate of ownership and certificate of registration together with a statement of any conditional sales contract, mortgage, or other lien as provided in said section 53–107.' (Emphasis supplied.)

"Paragraph (d) then goes on to put teeth into this requirement by providing:

'*Until said registrar shall have issued a certificate* of registration and certificate of ownership and statement as hereinbefore provided, *delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose.*' (Emphasis supplied.)

"Paragraph (a) of section 53–109 requires that upon a transfer of any title or interest of an owner in or to a motor vehicle registered under the provisions of the act, the person whose title or interest is to be transferred shall write his signature with pen and ink upon the certificate of ownership in the appropriate space provided upon the reverse side of such certificate, and such signature shall be acknowledged before a notary public. This is exactly what Sherley M. Shelton did, so, since Plaza was a dealer, it acquired title to the motor vehicle, without the necessity of having it registered in its name. But title never passed from Plaza to Ulstad nor from Ulstad to Robert Washington, Jr., because of Plaza's failure to observe the duty placed upon it by paragraph (c). Not only did title not pass, but despite physical delivery, in contemplation of the law no delivery occurred and possession legally remained in Plaza, which would mean that anyone operating this automobile would be doing so as agent or bailee of Plaza." 154 Mont. at 162–163, 461 P.2d at 203.

With reference to Ostermiller v. Parker, the court pointed out that Nationwide Mutual Insurance Company had issued a policy to William Parker "similar to that issued by Glens Falls to Robert O. Washington in the instant case in that it excluded from coverage a vehicle furnished for the regular use of the insured or a member of the same household." The court continued:

"This Court concluded in essence that the Mercury was not owned by either Parker, but by the automobile dealer, *but that it was furnished for the regular use of the policyholder or a member of the same household.*" (Emphasis in original opinion.)

"The Ostermiller case is thus authority that in this case the policy issued by Glens Falls to Robert O. Washington afforded no coverage to J. O. Washington, Jr. On the other hand, it is also authority that in this case Plaza, the dealer charged with the

statutory duty of causing transfer of title by forwarding the necessary documents to the registrar of motor vehicles, remained the owner of the Mercury automobile here involved by its failure to do so, expressly affirming the Safeco case in this respect.

"Here, Glens Falls argues that there is a factual difference from the Safeco and Ostermiller cases and that is that Robert O. Washington, Jr. had it within his power to secure a certificate of title and certificate of registration. Should this call for a different result? We think not. In the first place, it would require him to falsify the certificate of title by inserting his name as purchaser from Sherley M. Shelton so that it would appear to be a transaction between two individuals.

"Secondly, a contrary holding would negate the legislative policy expressed by section 53–109." 154 Mont. at 166, 461 P.2d at 205.

In discussing Colbrese the court stated that the "District Court, 227 F.Supp. 978, gauged this Court's meaning correctly."

The Montana Court concluded:

"Thus, Plaza, in the instant case, failed to comply with the requirements of section 53–109, R.C.M.1947, and remained the owner of the Mercury automobile and was covered by the garage policy.

"From what we have heretofore said, it is clear that Ulstad did not comply with the statute either. It is also clear that Ulstad was not the owner, because Plaza still was. But, it did come into Ulstad's dominion in connection with his garage operations. Glens Falls policy of insurance covered the Mercury under its clause which provided:

'2. *Automobile Not Owned or Hired.* The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein or a member of the same household as any such person.'

"For the foregoing reasons the 'Question for Determination' set forth in Judge Jameson's 'Certificate of Facts and Issues' is answered. The Mercury automobile was 'owned' by Plaza and was covered by its garage policy. Likewise, by reason of Ulstad's failure to comply with the statute, Ulstad's policy of insurance was equally liable." 154 Mont. at 168–169, 461 P.2d at 206.

This court adopts and will follow the decision of the Supreme Court of Montana in Irion v. Glens Falls,[5] supra. Following this decision, however, Glens Falls raised additional questions involving the interpretation of the insurance contracts, which it contended were not determined by the Montana Court. Without waiving its position with respect to the interpretation of ownership, plaintiff argued that (1) J. O. Washington was not a "person insured" under either contract of insurance by reason of the exclusion contained in the omnibus clause of each policy; (2) the "decision of the Montana Supreme Court herein infringes upon the rights of Glens Falls Insurance Company under the contract and due process clauses of the United States Constitution"; (3) the defendants Washington should be estopped to claim any benefits as insured or otherwise through either the Plaza or Ulstad policy, and the Irions as creditors or claimants are likewise precluded from recovery; and (4) in any event coverage under the Plaza policy would be limited to the maximum amount required by the Montana Financial Responsibility Law.[6]

---

5. It is recognized that ordinarily this court is bound by a decision of the Court of Appeals for the Ninth Circuit. Here, however, we are concerned with the construction of a Montana statute, and the Supreme Court of Montana has interpreted the statute, not as an abstract principle of law or under a different factual situation, but with respect to the specific facts and contentions asserted in this court.

6. On January 2, 1969, the court submitted to counsel for their consideration a pro-

At a hearing on defendants' motions for summary judgment on February 9, 1970, the court raised the question as to whether it might be limited under the pleadings to a determination of the precise question raised in plaintiff's amended complaint and submitted to the Supreme Court of Montana, i. e., whether in effect Safeco or Colbrese was controlling. All parties agreed, however, that this court should determine all issues relating to the construction of the policies,[7] the defendants contending that these issue were in fact determined by the Supreme Court of Montana adversely to plaintiff's contentions.

As noted supra (n. 6), the Supreme Court of Montana in the initial declaratory judgment action was not requested by this court to pass upon the specific policy provisions relating to exclusion and limitation of amount. However, as set forth in more detail in the memorandum opinion filed April 6, 1970, Glens Falls in its pleadings and briefs in the declaratory judgment action specifically relied on both of the policy provisions and its claim of estoppel. These questions were argued by the respective counsel in their briefs and again on a petition for rehearing.

In its opinion entered April 6, 1970 this court set forth its tentative conclusions. By reason of the sharp controversy between the parties as to whether the Supreme Court of Montana had given consideration to the "additional questions" raised by Glens Falls, judgment was reserved to permit a certification to the Supreme Court of Montana, if desired by counsel, "to determine whether in reaching its conclusion that both policies were 'equally liable' the court considered and passed upon the policy provisions and other defenses upon which Glens Falls now relies." The opinion stated that if none of the parties desired to seek a clarification of this question in the Supreme Court of Montana, the motions of Irion, Washington and Hartford for summary judgment would be granted.

Plaintiff thereupon instituted a declaratory judgment action in the Supreme Court of Montana. A proposed certification of the facts and issues was submitted to the Supreme Court, seeking a determination of the question

"whether in Cause No. 11653, Irion v. Glens Falls Insurance Company et al, 461 P.2d 199, * * * the Supreme Court of Montana, in determining that

posed certificate of facts and issues based upon the statements submitted by counsel. By letters dated January 6 and 15, counsel for plaintiff for the first time requested the addition of the questions with respect to the interpretation of the exclusion clause of both policies and the limitation of amount clause of the Plaza policy. The defendants Irion and Washington objected to the addition, and the court declined to add these questions, taking the position that the certificate should be limited to the issue relating to ownership and coverage as set forth in the Certificate of Facts and Issues. As discussed infra, plaintiff did, however, raise these questions in its answer in Irion v. Glen Falls and argued them in the Supreme Court of Montana.

7. In particular, counsel take the position that these questions are properly before the court under paragraph 22 of the amended complaint, which reads:

"That Plaintiff is unable to determine if it has any responsibility to the said

J. O. Washington, Jr. as a result of the aforementioned automobile accident involving the said J. O. Washington, Jr., Robert Washington, Harlan Irion and Helen Y. Irion and the said Hartford Insurance Co. for whatever interest it has in the said matter and will be unduly prejudiced without a determination of the duties, rights and responsibilities of the Plaintiff in respect to the said persons and that this Court can, by Declaratory Judgment, determine such rights, duties and responsibilities; and therefore, this Court should determine by Declaratory Judgment what the said respective rights, duties, and responsibilities of the Plaintiff, if any, are to the said J. O. Washington, Jr. or Robert Washington."

It may be noted at this point that the amended complaint was before the Supreme Court of Montana in Irion v. Glens Falls, and the court quoted portions of paragraph 22.

the policies issued to Plaza and Ulstad were 'equally liable', considered and passed upon the contentions advanced by Glens Falls Insurance Company in its answer, briefs and oral argument, and now asserted in this court, that the policies issued to Plaza and Ulstad provided no coverage or limited coverage for J. O. Washington, Jr., for the reasons that:

(1) J. O. Washington, Jr., was not a 'person insured' under either policy of insurance because both policies excluded from the definition of 'persons insured' * * *.

'Any person * * * with respect to any automobile (b) possession of which has been transferred pursuant to an agreement of sale'; .

(2) the decision of the Supreme Court of Montana 'infringes upon the rights of Glens Falls Insurance Company under the contract and due process clauses of the United States Constitution';

(3) the defendants Washington should be estopped to claim benefits as insured or otherwise under either policy, and the Irions as creditors or claimants are likewise precluded from recovery;

(4) in the event there is coverage under the Plaza policy, it would be limited by endorsement No. A 782 entitled 'Limited Coverage for Certain Insureds';

and if any one or more of such contentions, although raised, were not considered and passed upon by the Montana Supreme Court, whether consideration thereof would negate its holding of November 14, 1969, that both policies were equally liable under Montana law, and result in a holding that, under Montana law, Glens Falls Insurance Company did not insure J. O. Washington, Jr., against liability imposed by law for injuries to the persons and property of Harlan Irion and Helen Y. Irion arising out of this operation of the 1957 Mercury automobile at the time of the collision on November 14, 1965, to the extent of the limits of liability under both its Policy No. PCL 639587 issued to Plaza Chrysler-Plymouth, Inc., and its Policy No. GA 4–23–39 issued to Kenneth Ulstad."

On September 17, 1970 the Supreme Court of Montana entered a per curiam opinion denying plaintiff's application for acceptance of jurisdiction under Rule 1 and stating:

"Our denial is based on our determination that the questions upon which adjudication is sought are properly subject to determination by the United States District Court, the forum in which jurisdiction of Cause No. 11897 reposes, and not upon any determination that the question certified in our previous opinion found in 154 Mont. 156, 461 P.2d 199, was fully answered.

"Further, we do not believe we should determine questions for the Federal Court except when there is need for such determination, which we doubt exists here."

On October 9, 1970 plaintiff filed its motion for summary judgment on the ground that neither the Plaza policy nor the Ulstad policy afforded coverage because of the provision in each policy (clause iii) that:

" 'Any person * * * with respect to any automobile * * * (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale;' * * is excluded from the definition of a person 'insured'."

In considering the effect of the per curiam opinion of the Supreme Court of Montana denying plaintiff's application for acceptance of jurisdiction under Rule 1, it should be noted that the federal court has certified very few cases since Rule 1 was adopted. We recognize that this rule is clearly limited to those cases in which it shall appear that there is a controlling question of Montana law and to which there is a substantial difference of opinion. The question of

ownership of the Mercury automobile and coverage under the Plaza and Ulstad policies was of this nature, and the Montana Supreme Court accepted jurisdiction and rendered its declaratory judgment. This court then resolved the remaining issues in favor of the defendants on the basis of its interpretation of Montana law, including the decisions of the Montana Court in Safeco, Ostermiller and Irion.

As noted supra, entry of judgment was reserved to permit the parties to seek a further determination by the Supreme Court of Montana. Plaintiff commenced its declaratory judgment action in that court.[8] Defendants filed a motion to dismiss. Attached to the proposed certificate of facts and issues was a copy of this court's opinion of April 6, 1970. Following briefs and oral argument, the Supreme Court declined to accept jurisdiction.

In its pleadings and briefs in Irion v. Glens Falls, and again in Glens Falls v. Irion, plaintiff sought a determination by the Supreme Court of Montana adverse to the conclusions of this court in its memorandum opinion filed April 6, 1970. It is true, as plaintiff argues, that the Montana court has not expressly construed the exclusion clause in the two policies, although the policies were before the court in both cases and plaintiff advanced the same arguments here asserted. The court expressly held that Plaza was the owner and in legal possession of the vehicle and that both policies were equally liable. In this posture of the case, it seems clear that this court must now resolve the remaining legal issues on the basis of Montana law, including, but not limited to, the effect

of the holdings of the Supreme Court of Montana in Safeco, Ostermiller and Irion.

With respect to *ownership* and *possession* of the automobile, the Supreme Court concluded:

> "Not only did title not pass, but despite physical delivery, in contemplation of the law no delivery occurred and possession legally remained in Plaza, which would mean that anyone operating this automobile would be doing so as agent or bailee of Plaza." 154 Mont. at 163, 461 P.2d 203.

In answering the question submitted with respect to both ownership and coverage, the Court said:

> "The Mercury automobile was 'owned' by Plaza and was covered by its garage policy. Likewise, by reason of Ulstad's failure to comply with the statute, Ulstad's policy of insurance was equally liable." 154 Mont. at 169, 461 P.2d at 206.

Significant also is the fact that the Montana court expressly held that the policy issued by Glens Falls to Robert O. Washington was not liable by reason of the fact that the vehicle was "owned" by Plaza, but "was furnished for the regular use of the policyholder or a member of the same household" and accordingly excluded from coverage under that policy. In reaching this conclusion the Court referred to its decision in Ostermiller and held that plaintiff's argument that "there is a factual difference from the Safeco and Ostermiller cases" was without merit. It becomes important accordingly to determine precisely what the Supreme Court of Montana determined in Ostermiller.[9] The holding in that case was

8. The complaint sought a declaratory judgment that "J. O. Washington was not an insured under any policy of insurance issued by Glens Falls Insurance Co. to either Plaza Chrysler-Plymouth, Inc. or Kenneth Ulstad for the reason that possession of the said automobile had been transferred to another by each of the named insureds under the respective policies; to-wit: Plaza Chrysler-Plymouth, Inc. and Kenneth Ulstad, pursuant to an agreement of sale; and further to declare,

if necessary, the effect of the 'limited coverage for certain insureds' endorsement made a part of the Plaza Chrysler-Plymouth, Inc. policy, and to declare the rights and liabilities of the parties under said policy pursuant to the Constitution of the United States."

9. Glens Falls was a third party defendant in Ostermiller v. Parker and was represented by one of its counsel in this case. There has been filed as a part of the rec-

not in any sense an advisory opinion. It was a final determination of liability.

In Ostermiller v. Parker, William Parker had purchased a Mercury automobile from Midland Dodge, an automobile dealer, under a purchase order agreement. Before the last installment on the contract was paid, Parker's son Michael, who was to become the owner of the vehicle upon payment in full, was involved in an accident which gave rise to an action against him by Ostermiller. Glens Falls had issued a garage liability policy to Midland Dodge. It settled the Ostermiller claim and brought a third party action against two other insurance companies, including Nationwide Mutual Insurance Company, which had issued to William Parker the same type of a policy which Glens Falls had here issued to Robert O. Washington.

In affirming a judgment issued against Glens Falls, the Supreme Court of Montana held that there had not been a "completed sale", and that the automobile driven by Michael Parker was a nonowned vehicle "furnished for regular use to the policyholder or a member of the same household and was so excluded by the policy provisions of the Nationwide policy from coverage under that policy." 152 Mont. at 343, 451 P.2d at 518.

It is true that in its opinion in Ostermiller the court did not expressly discuss the exclusionary clause but it did affirm a judgment holding Glens Falls liable under its garage liability policy. In its brief in the Supreme Court of Montana and its petition for certiorari, Glens Falls relied primarily upon Colbrese and attempted to distinguish Safeco. In the Montana court, however, it also argued that the "definition of insured does not include a person to whom possession has been transferred by the named insured pursuant to an agreement of sale",[10] thus attempting to distinguish both Safeco and Colbrese. It is unrealistic to assume that the Montana court either overlooked or ignored the effect of the exclusionary clause in determining liability.[11]

We come now to the precise question presented by plaintiff's motion for summary judgment: Was coverage excluded on the ground that possession of the automobile had been transferred to Washington by Plaza pursuant to an agreement of sale?

The Plaza, Ulstad, and Ostermiller policies all excluded from the definition of "person insured" the following:

"(iii) Any person or organization other than the named insured with respect

---

ord in this court a copy of Glens Falls' brief in the Supreme Court of Montana in Ostermiller and a copy of its petition for certiorari filed in the Supreme Court of the United States. Glens Falls Insurance Co., third party defendant and appellant v. Nationwide Mutual Insurance Co., and State Farm Mutual Automobile Insurance Co., third party defendants and respondents. Ostermiller v. Parker, 152 Mont. 337, 451 P.2d 515, cert. denied 394 U.S. 975, 89 S.Ct. 1471, 22 L.Ed.2d 755.

10. In its petition for certiorari, Glens Falls specified four grounds for review: (1) that the decision of the Supreme Court of Montana was contra to the Ninth Circuit decision in Colbrese; (2) that "Sec. 53–109(d), R.C.M., violates the constitution by impairing insurance contracts which exclude coverage where possession of a motor vehicle has been transferred to another pursuant to an agreement of sale as occurred in this case"; (3) that the "statute violates the Due Process

clause of the Fourteenth Amendment"; and (4) that the decision "Places Undue Burden on Insurance Industry and Automotive Dealers", arguing that if allowed to stand, "THE ONLY SOLUTION AVAILABLE TO THE INSURANCE INDUSTRY IN MONTANA IS TO CANCEL ALL COVERAGE FOR AUTOMOBILE DEALERS." (Emphasis in Original.)

11. Plaintiff argues that Ostermiller should not be given "precedential value" since it did not discuss the exclusion clause, relying upon Webster v. Fall, 1925, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411, which holds that, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Here, however, the question was brought to the attention of the court and presumably was considered in determining that Glens Falls was liable.

to any automobile (a) owned by such person or organization or by a member (other than the named insured) of the same household, or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale;"

Initially plaintiff contended that Washington was the "owner" of the Mercury automobile at the time of the accident. On this basis it attempted to distinguish Safeco and Ostermiller, recognizing that in those cases there had been "no completed sale." If plaintiff had prevailed on its contention that Washington was the owner, there would have been no coverage under clause iii(a). But the Supreme Court of Montana rejected that contention, holding that Plaza, not Washington, was the owner, and that Glens Falls was not liable under the policy it issued to Washington, but was liable under the policies it issued to Plaza and Ulstad.

Plaintiff contended in the alternative that Washington was in possession of a vehicle which had been transferred by the named insured (Plaza and Ulstad) pursuant to an agreement of sale, and accordingly was not an insured within the meaning of clause iii(b). There is no basis, however, for finding an executory contract of sale.[12] The price had been paid in full. The parties did not contemplate any further action to consummate the sale. Under the holding of the Montana court in Irion there was no valid sale or agreement of sale by reason of the failure of Plaza to comply with the provision of section 53–109. Plaza was not only the owner but also was legally in possession of the vehicle. Washing-

ton was operating the vehicle as its agent or bailee.

Moreover, the references in the court's opinions in both Ostermiller and Irion to other provisions of the insurance policies is further indication that the contents of the policies were not overlooked and suggest that the court concluded in each case that the exclusion clause upon which plaintiff relied was not applicable.

Considered together, Safeco, Ostermiller and Irion clearly support the conclusion that by reason of the dealer's failure to comply with paragraph (c) of Section 53–109, R.C.M.1947, the dealer's delivery of the automobile was deemed not to have been made, title thereto had not passed, and the "intended transfer" was not only incomplete but not "valid or effective for any purpose" because of the provisions of section 53–109(d). Coverage was not excluded under either policy issued by plaintiff.

While the cases decided by the Supreme Court of Montana are, in the opinion of this court, determinative of this issue, this conclusion is fortified by a recent decision of the Supreme Court of Missouri holding, under comparable statutory provisions,[13] that "a sale contrary to the statutory provisions is fraudulent and void." Greer v. Zurich Insurance Company, 1969, 441 S.W.2d 15, 25.

In Greer an automobile had been sold without assignment of the certificate of title as required by the Missouri statute. The defendant insurance company had issued a garage liability policy containing an exclusion clause identical to those in the policies issued by plaintiff. In af-

---

12. There would be more reason to hold that clause iii(b) was applicable in Ostermiller, since the vehicle had been sold under a purchase order agreement and the certificates of title and registration were still in possession of the dealer. If either clause were applicable here, however, it would be iii(a), but the express language of the court precludes that construction.

13. Subsection 4 of § 301.210 R.S.Mo.1959, V.A.M.S. provides that "the sale of any

motor vehicle * * * without the assignment of such certificate of ownership, shall be fraudulent and void." 441 S.W. 2d at 25. The Montana law reads, "delivery of any motor vehicle shall be deemed not to have been made and title thereto shall not have passed and said intended transfer shall be incomplete and not be valid or effective for any purpose." R.C.M.1947 § 53–109(d).

firming a judgment against the insurer, the court said in part:

"In Sabella v. American Indemnity Company, Mo., 372 S.W.2d 36, at p. 40, this court en banc stated that the rule established in Allstate and followed in Haynes was correct and in accord with principles announced by this court and further held: 'The requirements of § 301.210 are definite and positive; and strict compliance is required by our decisions (hereinabove cited) to pass title to any motor vehicle. Therefore, we hold that until the certificate of title properly assigned is delivered by the seller to the buyer the buyer does not become the owner. We further hold that, when the seller delivers a motor vehicle to the buyer without delivering to him the certificate of title, he is permitting the buyer to use the vehicle so as to make him an additional insured, under the policy provision herein involved, until title passes to him.'" Id. at 23.

In considering the argument that there was a sale or delivery pursuant to an agreement of sale, the court continued:

"In a broad sense, every automobile sold is delivered 'pursuant to an agreement of sale'; without agreement there could be no sale. The narrower question here is whether an agreement which postpones passing of title beyond the delivery of possession of the motor vehicle is recognizable under Missouri law as a valid and binding sales agreement." Id. at 25.

The court concluded that "[t]he language is plain and the Missouri decisions

have uniformly held that a sale contrary to the statutory provisions is fraudulent and void." Id.[14]

Plaintiff relies upon cases from New York[15] and Ohio.[16] It is true that these cases lend some support to plaintiff's position, but they are distinguishable. While the New York and Ohio statutes construed in those cases provided in essence that no person shall sell or otherwise dispose of a motor vehicle without delivery of a certificate of sale with proper assignment, and that no purchaser shall acquire a motor vehicle without obtaining a certificate of title, they do not contain the stringent penalties imposed by section 53-109(d) of the Montana statute or subsection 4 of section 301.210 of the Missouri statute. The construction placed upon the Montana statute by the Supreme Court of Montana in essence follows the reasoning of the Missouri court. The Montana decisions are controlling and in this court's opinion compel the conclusion that the exclusion clauses in the policies issued by plaintiff are not applicable.

■ This disposes of the question raised by plaintiff in its motion for summary judgment. Lack of coverage under the exclusion clause was also plaintiff's primary contention in opposing defendants' motions. In addition, however, plaintiff has contended that the "decision of the Montana Supreme Court herein infringes upon the rights of Glens Falls Insurance Company under the contract and due process clauses of the United States Constitution." The court finds no merit in this contention.[17]

---

14. The Missouri court also noted that "[a]s a general rule, a valid and enforceable contract may not arise out of a transaction prohibited by statutory law." This is the law in Montana. Johnson v. Kaiser, 1937, 104 Mont. 261, 274, 65 P.2d 1179; McManus v. Fulton, 1929, 85 Mont. 170, 278 P. 126, 67 A.L.R. 690, and has been so recognized by this court, Hutterian Brethren of Wolf Creek, etc. v. Haas, 1953, 116 F.Supp. 37, 41.

15. Rudes v. Hartford Accident and Indemnity Co., 1969, 32 A.D.2d 575, 299 N.Y.S. 2d 86, and Switzer v. Merchants Mutual Casualty Co., 1957, 2 N.Y.2d 575, 161 N.Y.S.2d 867, 141 N.E.2d 904.

16. Ohio Farmers Ins. Co. v. Hoosier Casualty Co., 1963, 117 Ohio App. 507, 193 N.E.2d 153; Brewer v. DeCant, 1958, 167 Ohio St. 411, 149 N.E.2d 166; Garlick v. McFarland, 1953, 159 Ohio St. 539, 113 N.E.2d 92; Grange Mutual Casualty Co. v. Clifford, 1967, 13 Ohio Misc. 12, 230 N.E.2d 686 (Court of Common Pleas); Cook v. Kozell, 1964, 176 Ohio St. 332, 199 N.E.2d 566; Randall Ins. Agency, Inc. v. Burns, 1961, 115 Ohio App. 397, 185 N.E.2d 309.

17. As noted supra (n. 10) the same contention was asserted in plaintiff's petition for certiorari to the United States Supreme Court in the Ostermiller case.

The rules for determining whether a state statute and decisions construing it are in contravention of the Contract Clause of the Constitution were summarized in City of El Paso v. Simmons, 1965, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446, as follows:

"The decisions 'put it beyond question that the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula,' as Chief Justice Hughes said in Home Building & Loan Assn. v. Blaisdell, 290 U.S. 398, 428, [54 S.Ct. 231, 236, 78 L.Ed. 413]. The *Blaisdell* opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that '[n]ot only is the constitutional provision qualified by the measure of control which the state retains over remedial processes, but the state also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." Stephenson v. Binford, 287 U.S. 251, 276, [53 S.Ct. 181, 189, 77 L.Ed. 288]. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. * * * This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.' 290 U.S., at 434–435, [54 S.Ct., at 238–239]. Moreover, the 'economic interests of the state may justify the exercise of its continuing and domi-

nant protective power notwithstanding interference with contracts.' *Id.*, at 437, [54 S.Ct., at 239]. The State has the 'sovereign right * * * to protect the * * * general welfare of the people * * *. Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary." ' East New York Savings Bank v. Hahn, 326 U.S. 230, 232–233, [66 S.Ct. 69, 71, 90 L.Ed. 34]." 379 U.S. at 508–509, 85 S.Ct. at 583–584.

■ The purpose of section 53–109 is to regulate the transfer of title and interest in motor vehicles and not the issuance of insurance policies covering the vehicle. Subsection (d) prescribes the consequences of a failure to comply with the statute. The Montana court does not hold that the exclusion clause is void. Rather it holds that pursuant to subsection (d) the intended transfer "shall not be valid or effective for any purpose", where there is a failure to comply with the statute.[18] The exclusionary clause simply is not applicable.

■ In any event, it cannot be said that a state statute, as construed by the highest court of that state, impairs the obligation of a contract made subsequent to the enactment of the statute. Chicago, Burlington & Quincy Railroad Co. v. Cram, 1913, 228 U.S. 70, 33 S.Ct. 437, 57 L.Ed. 734. Section 53–109, R.C.M.1947 was enacted in 1933. Safeco was decided in 1963. The insurance contracts issued by plaintiff to Plaza and Ulstad were made in 1965. The exclusion clause included in the insurance contract was subject to the provisions of subsection (d) of section 53–109.[19]

■ Plaintiff next contends that the defendants Washington "should be es-

18. This was recognized by the Missouri Court in holding that the statutory registration provisions were "designed to hamper the traffic in stolen automobiles and to prevent fraud and deceit in the sale of used cars. It is a police regulation of the highest order and should be liberally construed to accomplish its purpose." Greer, supra, 441 S.W.2d at 26.

19. See also Whitfield v. Aetna Life Ins. Co., 1907, 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895, holding that a statutory provision relating to policies of life insurance was a legitimate exercise of the power of the state and could not lawfully be restricted by a policy subsequently issued.

topped to claim any benefits as insured or otherwise" with respect to either the Plaza policy or the Ulstad policy. This argument is predicated upon plaintiff's contention that Robert O. Washington, Jr. had "power as well as the duty to make the transfer of title into his own name"—the same basis on which plaintiff attempted to distinguish Safeco and Ostermiller. This contention, however, was answered by the Supreme Court of Montana in Irion as follows:

> "Here, Glens Falls argues that there is a factual difference from the Safeco and Ostermiller cases and that is that Robert O. Washington, Jr. had it within his power to secure a certificate of title and certificate of registation. Should this call for a different result? We think not. In the first place, it would require him to falsify the certificate of title by inserting his name as purchaser from Sherley M. Shelton so that it would appear to be a transaction between two individuals.

> "Secondly, a contrary holding would negate the legislative policy expressed by section 53–109." 154 Mont. at 166, 461 P.2d at 205.

Plaintiff's liability rests upon the failure of its insureds, not Washington, to comply with the statute, with the result that the responsibilities of ownership and possession remained with Plaza,[20] the intended transfer was not valid, and plaintiff remained liable under the policies it issued to Plaza and Ulstad.

■ Finally, plaintiff contends that if the court should conclude that the exclusionary clause is not applicable, there would still "be no actual coverage under Plaza's policy in view of the 'limited coverage for certain insureds' endorsement attached to the policy." It argues that "[i]f J. O. Washington had other insurance up to or beyond the limits of the financial responsibility laws of the State of Montana, then this indorsement would apply and the limits of liability on the Plaza policy would be as set forth therein."

In its initial brief, it was plaintiff's position that there were two other possible sources of insurance, the Farmers Insurance Company policy issued to J. O. Washington, Jr. and the garage policy issued by Glens Falls to Ulstad.[21] Farmers Insurance Company's motion for summary judgment was granted by order entered April 6, 1970 on the ground that this policy did not afford coverage since there was no evidence that the Mercury was being driven as a "substitute automobile" for the insured vehicle.

Accordingly we are now concerned solely with the question of whether Glens Falls's liability under the policy it issued to Plaza is limited by the policy it issued to Ulstad, which was found by the Supreme Court of Montana to be "equally liable."[22] For the reasons hereinafter set forth, the court concludes that the "limited coverage for certain insureds" endorsement does not apply to J. O. Washington, Jr. In reaching this con-

---

20. The Montana court expressly recognized that "[t]he legislature has exempted duly licensed automobile dealers from the requirement by paragraph (b) * * * but the price the dealers pay for this privilege is that they * * * are to see to the timely and proper registration on resale, and, if they do not, the legislature * * * has provided a penalty—the dealer will remain the owner with all the responsibilities of ownership." 154 Mont. at 166, 167, 461 P.2d at 205.

21. There was a third policy—the Family Automobile Policy issued to Robert O. Washington by Glens Falls. As noted supra, the Supreme Court of Montana

held that this policy did not afford coverage to J. O. Washington, Jr. 154 Mont. at 166, 461 P.2d at 205. Thus, as a part of its opinion holding that there was coverage under the policies plaintiff issued to Plaza and Ulstad, the court also held expressly that there was no coverage on the policy plaintiff had issued to Robert O. Washington—all on the basis of Plaza's ownership of the vehicle.

22. The policy limits are not shown in the copies of the Plaza and Ulstad policies which were filed. The precise effect of the endorsement, if applicable, therefore cannot be determined.

clusion it is necessary to analyze in some detail the various provisions of the policy and endorsements.[23]

The basic policy plaintiff issued to Plaza is entitled "Comprehensive General —Automobile Liability Policy." Attached are two endorsements (among others) —one entitled "Garage (Premises-Operations-Automobiles)" and the other entitled "Limited Coverage for Certain Insureds". The latter endorsement, which plaintiff contends limits its liability under the Plaza policy reads in its entirety:

GARAGE

AUTOMOBILE

AL 8522
(Ed. 7-62)

A 782
## LIMITED COVERAGE FOR CERTAIN INSUREDS

This endorsement, effective _____ (12:01 A. M., standard time) , forms a part of policy No.

issued to

by

In consideration of the reduced rate of premium made applicable to the insurance under Part I, it is agreed that the policy is amended as follows:

1. Paragraph 3 of "Persons Insured" is amended to read as follows, and Paragraphs 4 and 5 below are added, all subject to exceptions (i), (ii), (iii) and (iv) as set forth in the policy.

 "(3) With respect to an automobile to which the insurance applies under paragraph 1 (a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

 (a) any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner,

 (b) any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person; provided that with respect to Coverage C, such person shall be deemed to be a person for whom insurance is afforded, whether or not there is any other valid and collectible automobile liability insurance.

 (4) With respect to an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission;

 (5) Any other person or organization but only with respect to his or its liability because of acts or omissions of the named insured within the Automobile Hazard or of an insured under paragraph (3) or (4) above."

2. Paragraph 1. (a), (b) and (c) of "Limits of Liability" under Part I is made subject to the following provision:

 "Provided that with respect to a person described as insured under paragraph (3) (b) of Persons Insured and any person or organization legally responsible for the use of the automobile by such person, other than the named insured and any person or organization described in paragraph (3) (a) of Persons Insured,

 (i) the applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily injury or property damage specified in the financial responsibility law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all other valid and collectible insurance available to the insured, and

 (ii) the insurance under this policy shall not apply to any loss with respect to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing, only for the excess."

........................................................................................
Authorized Representative

IT IS CERTIFIED THAT THIS IS A TRUE AND EXACT COPY OF THE ORIGINAL POLICY.

SIGNED

[A3880]

---

23. Again the parties disagree sharply with respect to the application of the endorsement to particular provisions of the policy. This is not surprising. The court has had similar difficulty in determining the particular clauses in the policy to which the limited endorsement is applicable.

It will be noted that this endorsement refers to Part I of the policy and purports to amend Paragraph 3 of "Persons Insured" with respect "to an automobile to which the insurance applies" under Paragraphs 1(a) and (b) of "Automobile Hazards". It also makes Paragraphs 1 (a), (b), (c) of "Limits of Liability" under Part I subject to a provision of the endorsement. Neither the basic comprehensive automobile policy nor the garage endorsement, however, contain these designations. They do appear in the Garage Liability policy which plaintiff issued to Ulstad. It is quite obvious that the "Limited Coverage for Certain Insureds" endorsement was designed for the type of policy issued to Ulstad rather than the combination policy issued to Plaza.

Plaintiff in effect recognizes that the paragraphs which it contends were amended were not designated in the form set forth in the limited coverage endorsement, but argues that in construing the policy as a whole and giving effect to each provision thereof, it is possible to relate the provisions in the endorsement to comparable provisions in the Plaza policy. Even following this course it is difficult to arrive at the construction for which plaintiff contends.

The Garage endorsement defines "Persons Insured" in Paragraph B. Subparagraph (3), prior to any amendment reads in pertinent part:

"(a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph (a) of the Automobile Hazard, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.

"(b) any person while using an automobile to which the insurance applies under paragraph (b) of the Automobile Hazard with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

By the amendment paragraph (3) (b) becomes (4). Paragraph (3) (a) is modified and becomes (3) (b) and contains the limitation in amount of coverage. There is added as (3) (a) "any employee, director or stockholder of the named insured, any partner therein and any resident of the same household as the named insured, such employee, director, stockholder or partner."

The Hazards are defined in Paragraph A. The subparagraph relating to Automobile Hazard reads:

"(a) the ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations.

"(b) the ownership, maintenance or use of any automobile owned by the named insured in connection with garage operations while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use."

Plaintiff argues that any coverage for J. O. Washington "must be under Paragraph (a) of the Automobile Hazard" and that the limited coverage endorsement accordingly is applicable. Defendants argue that J. O. Washington was covered in added Paragraph (4), which contains no limitation, and is effective with respect to an automobile to which the insurance applies under Paragraph (b) of the Automobile Hazard.

The construction of the defendants is more consistent with the holding of the

Supreme Court of Montana in Irion, particularly in the court's reference to Ostermiller and its conclusions that Plaza was the owner of the vehicle and that Glens Falls was not liable under the policy issued to Robert O. Washington because the vehicle was furnished for the regular use of the policyholder or a member of the same household.[24]

In contemplation of law, Plaza, the owner of the vehicle, furnished it for the regular use of Robert O. Washington, Jr., who in turn permitted his brother J. O. Washington to use the vehicle. Under Paragraph (4) J. O. Washington was a "person using such automobile with the permission of the person" to whom the vehicle was furnished.

In any event, the policy provisions are somewhat ambiguous. Where "the contract is fairly susceptible of two constructions, one favorable to the insurer and the other favorable to the insured, the one favorable to the insured will be adopted." Kansas City Fire & Marine Insurance Company v. Clark, D.Mont. 1963, 217 F.Supp. 231, 235, aff'd, 9 Cir. 1964, 329 F.2d 647.[25] Moreover, "(e)x-clusions and words of limitation must be strictly construed against the insurer." Id. 217 F.Supp. at 238.

The motion of plaintiff for summary judgment is denied. The motion of defendants Helen Y. Irion, Robert O. Washington, Jr., J. O. Washington, Jr., Harlan Irion, and Hartford Insurance Company are granted. Defendants will prepare and file draft of judgment. In view of the probability of appeal, the court suggests that any hearing on the motion of defendants Washington for reimbursement for legal expenses be deferred until final determination of all issues relating to coverage.

---

24. Defendants suggest that plaintiff should not have it both ways. Under the decision of the Supreme Court of Montana in Irion it was relieved of any liability under the Family Automobile Policy it issued to Robert O. Washington, Sr., by reason of Plaza's ownership of the vehicle and the fact that it was owned or furnished for the regular use of a relative of the named insured.

25. See also cases decided by the Supreme Court of Montana and Ninth Circuit cited in Footnote 1, 217 F.Supp. at 235.